1  John E. Lord (Bar No. 216111)
2  jlord@onellp.com
   **ONE LLP**
3  9301 Wilshire Blvd., Penthouse Suite
   Beverly Hills, CA 90210
4  Phone: (310) 866-5157
5
6  *Attorneys for Defendants,*
   CAPSTONE PHOTOGRAPHY, INC.
7  AND MICHAEL SKELPS
8
9
                    **UNITED STATES DISTRICT COURT**
10
                    **CENTRAL DISTRICT OF CALIFORNIA**
11
12
   PETER H. WOLF, an individual          Case No. CV 13-09573-CAS-PJW
13
            Plaintiff,                     **DEFENDANTS' MEMORANDUM IN
14                                         SUPPORT OF MOTION FOR
                 v.                        JUDGMENT ON THE PLEADINGS**
15
   CAPSTONE PHOTOGRAPHY, INC.,            DATE:  October 13, 2014
16 a Connecticut corporation, MICHAEL    TIME:  10:00 AM
   SKELPS, an individual, and DOES       CTRM:  5
17 1-10, inclusive                       JUDGE: Hon. Christina A. Snyder
18          Defendants.
19
20
21
22
23
24
25
26
27
28
──────────────────────────────────────────────────────────────
      **MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................1

II.  BACKGROUND .................................................................................2

    A.  The '875 and '214 Patents ...........................................................2

    B.  The '035 Patent ............................................................................5

III.  LEGAL STANDARD .........................................................................6

    A.  A Court May Grant Judgment On The Pleadings For Ineligible Subject Matter, And Claim Construction Is Not Necessary .............................................6

    B.  A Patent May Not Claim Abstract Ideas Implemented On Conventional Computers ...................................................................8

IV.  THE CLAIMS OF THE ASSERTED PATENTS ARE NOT ELIGIBLE FOR PATENTABILITY UNDER 35 U.S.C. § 101 ...................................................9

    A.  The Claims Of The '875 And '214 Patents Are Directed To An Abstract Idea: Selecting And Distributing Photos Of A Race Using A Bib Number Or Other Identifying Information. .........................................................9

    B.  The Claims Of The '035 Patent Are Directed To The Same Abstract Idea Found In The '875 And '214 Patents, But Further Adds The Abstract Idea of Putting Advertisements On The Photographs .......................................12

    C.  The Claims Of The '875 And '214 Patents Do Not Provide An "Inventive Concept" Sufficient To Transform The Claimed Abstract Idea Into A Patent-Eligible Invention. ........................................................14

    D.  The Claims Of The '035 Patent Do Not Provide An "Inventive Concept" Sufficient To Transform The Claimed Abstract Idea Into A Patent-Eligible Invention. ..........................................................16

V.  CONCLUSION ....................................................................................18

i

# TABLE OF AUTHORITIES

## CASES

*Accenture Global Servs. v. Guidewire Software Inc.*
728 F.3d 1336 (Fed. Cir. 2013).............................................................. 16

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*
134 S. Ct. 2347 (2014) ................................................................ passim

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada*
687 F.3d 1266 (Fed. Cir. 2012)........................................... 7, 11, 16

*Bilski v. Kappos*
130 S. Ct. 3218 (2010) ........................................... 6, 8, 10, 13

*BuySAFE, Inc. v. Google, Inc.*
964 F. Supp. 2d. 331 (D. Del. 2013)............................................ 15

*Cardpool, Inc. v. Plastic Jungle, Inc.*
No. CV 12-04182, 2013 WL 245026 (N.D. Cal. Jan. 22, 2013)..................... 7

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*
No. CV 12-674, 2014 WL 923280 (E.D. Tex Jan. 21, 2014)........................ 7

*CMG Financial Services, Inc. v. Pacific Trust Bank*
No. CV 11-10344-PSG, Dkt. 164 (C.D. Cal. August 29, 2014) ................. 7, 16

*CyberSource Corp. v. Retail Decisions, Inc.*
654 F.3d 1366 (Fed. Cir. 2011)............................................... 16

*Dealertrack, Inc. v. Huber*
674 F.3d 1315 (Fed. Cir. 2012)........................................ 11, 15, 16

*Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*
758 F.3d 1344 (Fed. Cir. 2014)............................................... 16

*Eclipse IP LLC v. McKinley Equipment Corporation*
No. CV 14-154-GW, Dkt. No. 50 (C.D. Cal. Sept. 4, 2014)...................... 6

*Every Penny Counts, Inc. v. Wells Fargo Bank*
No. 8-11:CV-2826-T (M.D. Florida Sept. 11, 2014)........................... 16

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Gametek LLC v. Zynga, Inc.*
No. CV 13-2546, 2014 WL 1665090 (N.D. Cal. April 25, 2014) ........................................ 7

*Loyalty Conversion Systems Corp. v. American Airlines, Inc.*
No. CV 13-655, Dkt. 129 (E.D. Tex. September 3, 2014) .................................................. 16

*Lumen View Tech. LLC v. Findthebest.com, Inc.*
984 F. Supp. 2d 189 (S.D.N.Y. 2013) .................................................................................. 7

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*
132 S. Ct. 1289 (2012) ...................................................................................................... 17

*OIP Technologies, Inc. v. Amazon.com, Inc.*
No. CV 12-1233, 2012 WL 3985118 (N.D. Cal. Sept. 11, 2012) .................................... 7, 8

*Planet Bingo, LLC v. VKGS LLC*
2014 WL 4195188 (Fed. Cir. Aug. 26, 2014).................................................. 10, 12, 13, 16

*SmartGene, Inc. v. Advanced Biological Labs., SA*
555 Fed. Appx. 950 (Fed. Cir. 2014) ................................................................................ 11

*Ultramercial, LLC v. Hulu, LLC*
No. CV 09-6918 RGK, 2010 WL 3360098 (C.D. Cal. Aug. 13, 2010) .............................. 7

*Uniloc USA, Inc. v. Rackspace Hosting, Inc.*
No. 12-CV-375, 2013 WL 7393173 (E.D. Tex. Mar. 27, 2013) ........................................ 8

*Vacation Exchange, LLC v. Wyndham Exchange & Rentals, Inc.*
No. CV-12-04229-RGK, Dkt. No. 27 (C.D. Cal. Sept. 18, 2012).................................... 7, 8

*Walker Digital v. Google, Inc.*
2014 WL 4365245 (D. Del. September 3, 2014)............................................................... 16

iii

# I.    INTRODUCTION

The Court should grant judgment on the pleadings for Defendants Capstone Photography and Michael Skelps (collectively "Capstone").  Plaintiff Wolf's patents are invalid as a matter of law because they claim an abstract idea in violation of 35 U.S.C. § 101 and the Supreme Court's recent decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l,* 134 S. Ct. 2347 (2014).

The claims of the three asserted patents – U.S. Patent Nos. 6,985,875 ("the '875 patent"), 7,047,214 ("the '214 patent") and 7,870,035 ("the '035 patent") – claim the use of conventional computers and the internet to carry out the abstract idea of using a bib number (or other identifying information) of an individual race runner or other sporting event participant to select which photos to sell to that participant.  The '035 patent adds the further abstract idea of using a generic computer to place an advertisement on the photo.

To satisfy § 101, under the Supreme Court's recent *Alice* test, the claims must do something "significantly more" than simply describe an abstract idea.  *Alice* makes clear that the mere recitation of a generic computer is not enough.  Under *Alice,* a patent must do more than simply state the abstract idea while adding the words "apply it with a computer."  Here, the claims do just that.  The claims make bare reference to a general "computer network" with no details as to specific hardware or software.  Indeed, the patents admit on their face that all they purported to do was to take an abstract and well known method of selecting and distributing sporting event photos and put it on a general purpose computer.  That a computer might make the manual process go faster is not an "inventive concept" as required by *Alice* sufficient to render an abstract idea patentable.

The relevant question here is whether the claims do more than simply instruct someone to implement an abstract idea using a generic computer network.  They do not. The claims of the asserted patents fail to provide anything more than the abstract idea itself, and, therefore, fail the *Alice* test.

1

## II.     BACKGROUND

Plaintiff Peter H. Wolf filed suit against Capstone alleging infringement of the '875 patent, the '214 patent, and the '035 patent.

### A.     The '875 and '214 Patents

The '875 and '214 patents share the same title – "Process for Providing Event Photographs for Inspection, Selection and Distribution via a Computer Network" – and they both share the same specification.  They both contain independent claims which are remarkably similar in language.  For example, claim 1 of the '875 and '214 patents are identical, except that the '214 patent combines the "cataloging" and "accessing the server" steps of the '875 patent into one step.

| Claim 1 '875 patent | Claim 1 '214 patent |
| --- | --- |
| 1. A process providing event photographs of a sporting event for inspection, selection and distribution via a computer network, comprising the steps of: | 1. A process providing event photographs of a sporting event for inspection, selection and distribution via a computer network, comprising the steps of: |
| taking photographs of at least one participant of a sporting event along at least one point of a course or field thereof; | taking photographs of at least one participant of a sporting event along at least one point of a course or field thereof; |
| associating identifying data with each photograph taken, wherein the identifying data is selected from at least one of: a number corresponding to a number worn by a participant, a participant's name, a code acquired from a component worn by a participant, and a date and time, including hour and minute the photograph was taken; | associating identifying data with each photograph taken, wherein the identifying data is selected from at least one of: a number corresponding to a number worn by a participant, a participant's name, a code acquired from a component worn by a participant, and a date and time, including hour and minute the photograph was taken; |
| informing the sporting participants of the identifying data; | informing the sporting participants of the identifying data; |
| transferring the photographs to a computer network server; | transferring the photographs to a computer network server; |
| cataloging each of the photographs in | cataloging each of the photographs in |

2

| a Web-site server according to the identifying data; | a web-site server according to the identifying data |
|---|---|
| accessing the server at a location other than the sporting event and searching for a photograph of a particular sporting event participant utilizing the identifying data; and | so that the server can be accessed and a photograph of a particular sporting event participant can be searched for utilizing the identifying data; and |
| displaying the photograph of the sporting event participant for inspection and ordering. | displaying the photograph of the sporting event participant for inspection and ordering. |

This claim[1] merely takes the well-known concept of searching for photographs of a race or sporting event using identifying data, such as a bib number – and describes it in the modern world using a computer network, such as the internet.  The applicant himself acknowledged that in the prior art, this process was performed manually.  Specifically, photographs were taken of a race and "then developed and scrutinized for the identifying markings of event participants."  Col. 1:22-23.  The participants were "identifiable by their bib number markings" and "a thumbnail photographic image of the identified event participant" was then "printed and mailed to the event participant and transmitted back to the photographers by mail, fax or e-mail and accompanied by a check, money order or credit card authorization."  Col. 1:18-35.  The specification correctly notes that this manual process required "several weeks or even months of time and is costly due to the multiple mailings between the photographer and the event participants."  Col. 1:40-42.

The shared specification of these patents makes clear that the "present invention" describes the basic idea of how to accelerate this process using a computer network, such as a web-site on the internet.  Col. 1:14-17 ("[T]he present invention relates to a process for providing event photographs for inspection, selection and distribution via a computer

---

[1] For purposes of the § 101 analysis, claim 1 of the '875 patent illustrates the claimed subject found in the '875 patent, and claim 1 of the '214 patent illustrates the claimed subject matter found in the '214 patent.  The analysis regarding the '875 patent mirrors that of the '214 patent, as both these patents claim the same abstract idea.  All citations to column and line numbers are to the '875 patent, unless otherwise noted.

3

network, such as a web-site on the Internet."). It provides "obvious advantages to the photography business" because it uses a generic "computer network" to electronically select and transfer the photos, which greatly reduces the time needed to receive the photographs. Col. 5:22-26 ("All processing and ordering of pictures is conducted electronically, alleviating the material and shipping costs . . . as well as significantly reducing the time in which an event participant can receive photographs of the event.").

The method of the '875 patent is further described within the specification of the '035 patent as an "on-line method" to speed up the manual process of providing sporting event photographs and to do so "very rapidly":

> Wherein the traditional method was very costly due to multiple mailings between the photographer and event participants, and required several weeks or even months of time before event photographs were delivered, the inventor's on-line method [in the '875 patent] provides the photographs very rapidly usually within a few days.

'035 patent, col. 1:38-43

Although the first part of the claim, the preamble, recites a general "computer network" and the claim steps recite a general "computer network server," the claims provide no details on the computer network, or how the method is to be implemented on the computer network. It appears that any computer or computer network will suffice.

Both the '875 and '214 patents also share the same figures. These figures further explain the level of abstraction being claimed by the patents. For example, Figure 1 "is a flow chart illustrating the general steps taken in accordance with the present invention." Col. 2:61-64. Figure 1 shows the five steps of the alleged invention as follows:

**MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**



FIG. 1

This figure shows that the alleged invention is the idea of selecting and ordering photographs, but now using a computer network, or "WEB site."

As set forth below, under the new and stricter standards as set forth in *Alice*, the resolution of the § 101 issue in this case is straightforward. The claims of the '875 and '214 patents should be deemed invalid for claiming ineligible subject matter.

**B.    The '035 Patent**

Similar to the '875 and '214 patents, the '035 patent also claims the abstract idea of how to select and distribute photographs of a race or other sporting events using a bib number or other identifying data.

Representative claim 1 of the '035 patent reads:

> 1. A method for providing on-line event photographs, comprising the steps of:
> capturing multiple photographs of sporting event participants during a sporting event;
> associating identifying data with each photograph taken and storing the photographs in a database;
> accessing the database and searching for a photograph utilizing the identifying data and selecting a digital photograph;

5

1
2
3
4

> utilizing an electronic device to create a field in the selected digital photograph and associate visual advertiser indicia within the field; and
>
> transferring the selected photograph containing the visual field with advertiser indicia to a requestor.

5   The '035 patent claims the steps of capturing a photograph of a sporting event,

6   associating identifying data (*e.g.* a bib number), and accessing a generic computer

7   database to search for the photograph using the identifying data.  The key difference from

8   the '875 and '214 patents is that the '035 patent also claims the idea of using an

9   "electronic device" to create an area in the photograph to display an advertisement.  But

10  no specific information about the electronic device is claimed to carry out the idea of

11  using advertising on photographs.  The specification only requires that the electronic

12  device be a "computer."  '035 patent, col. 6:13-14 ("advertiser fields are created in the

13  digital photograph 38 using an electronic device, <u>such as a computer</u>.") (emphasis added).

14  Neither the claims nor specification provide any detail about this computer, or how the

15  method is to be implemented on the computer.  Any generic computer from a chain

16  electronics store would suffice.

17
18  ## III.   LEGAL STANDARD

19  ### A.   A Court May Grant Judgment On The Pleadings For Ineligible Subject Matter, And Claim Construction Is Not Necessary

20      Invalidity under § 101 is a "threshold test."  *Bilski v. Kappos*, 130 S. Ct. 3218, 3225

21  (2010).  Courts have routinely granted judgment or dismissed patent suits on the pleadings

22  under Fed. R. Civ. P. 12 because the patents were invalid under § 101 for claiming

23  ineligible subject matter.  *See, e.g., Eclipse IP LLC v. McKinley Equipment Corporation*,

24  No. CV 14-154-GW, Dkt. No. 50, at p. 17 (C.D. Cal. Sept. 4, 2014) (granting motion to

25  dismiss on the pleadings because the patents at issue "fail to satisfy 35 U.S.C. § 101");

26  *Gametek LLC v. Zynga, Inc.*, No. CV 13-2546, 2014 WL 1665090, at * 1 (N.D. Cal. April

27  25, 2014) (granting judgment on the pleadings because the patent at issue "claims an

28

unpatentable abstract idea"); *Clear with Computers, LLC v. Dick's Sporting Goods, Inc*., No. 12-CV-674, 2014 WL 923280, at *7 (E.D. Tex Jan. 21, 2014) (granting judgment on the pleadings because the "claims are directed to an ineligible abstract idea and thus invalid under 35 U.S.C. § 101"); *Cardpool, Inc. v. Plastic Jungle, Inc.,* No. CV 12-04182, 2013 WL 245026, at *3 (N.D. Cal. Jan. 22, 2013) ("[t]here is no authority for the proposition that a patent may not be deemed ineligible subject matter on a motion to dismiss"); *Vacation Exchange, LLC v. Wyndham Exchange & Rentals, Inc*., No. CV-12-04229-RGK, Dkt. No. 27, at p. 1 (C.D. Cal. Sept. 18, 2012) (granting motion to dismiss on the pleadings because the patent at issue "does not cover patentable subject matter"); *OIP Technologies, Inc. v. Amazon.com, Inc*., No. CV 12-1233, 2012 WL 3985118, at *5 (N.D. Cal. Sept. 11, 2012) ("the procedural posture of this case does not render Amazon's [12(b)(6)] motion premature"); *Ultramercial, LLC v. Hulu, LLC*, No. CV 09-6918 RGK, 2010 WL 3360098, at *1 (C.D. Cal. Aug. 13, 2010) (granting motion to dismiss for unpatentable subject matter), *vacated on other grounds*, 657 F.3d 1323 (Fed. Cir. 2011).

Courts need not wait for formal claim construction before ruling on subject matter eligibility.  *See, e.g., Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) (affirming that there is no "bright line rule requiring district courts to construe claims before determining subject matter eligibility" and noting in *Bilski* "the Supreme Court 'found subject matter ineligible for patent protection without claim construction'"); *Eclipse IP LLC*, No. CV 14-154-GW at p. 9 ("Here, based on the substance of the parties arguments and the content of the patents, this Court would find that neither separate claim construction proceedings nor further development of the factual record are required before addressing the § 101 issue"); *CMG Financial Services, Inc. v. Pacific Trust Bank,* No. CV 11-10344-PSG, Dkt. 164, at p. 11 (C.D. Cal. Aug. 29, 2014) ("Claim construction would not assist the Court in resolving the § 101 issue"); *Lumen View Tech. LLC v. Findthebest.com, Inc.,* 984 F. Supp. 2d 189, 205 (S.D.N.Y. 2013) (granting judgment on the pleadings because "[t]he claimed process elements of Claim 1 are straightforward. No components are opaque such that claim construction would be

7

necessary to flush out its contours"); *Uniloc USA, Inc. v. Rackspace Hosting, Inc.*, No. 12-CV-375, 2013 WL 7393173, at * 1 (E.D. Tex. Mar. 27, 2013) ("Section 101 questions of patentability may be resolved before claim construction"); *Vacation Exchange, LLC,* No. CV 12-04229-RGK at pp. 2-3 ("where claim construction is not required for a full understanding of the basic character of the claimed subject matter, a district court may resolve patentable subject matter eligibility on a motion to dismiss"); *OIP Technologies, Inc.,* No. CV 12-1233, 2012 WL 3985118, at *5 (the Federal Circuit "has never set forth a bright line rule requiring district courts to construe claims before determining subject matter eligibility").

Here, an invalidity analysis under § 101 does not require any factual development, discovery, or claim construction.  Claim construction would not clarify the Court's understanding of the claimed subject matter.  The relevant terms are clear, and no construction would dictate a different analysis regarding patentable subject matter. Therefore, the instant motion should be resolved at this time.

## B.   A Patent May Not Claim Abstract Ideas Implemented On Conventional Computers

Section 101 of the Patent Act defines subject matter eligibility.  In interpreting Section 101, the Supreme Court has recognized three categories of subject matter that cannot be patented: "laws of nature, physical phenomena, and abstract ideas."  *Bilski,* 130 S.Ct. at 3225.  Abstract ideas are deemed ineligible for patenting in order to prevent a "monopoly" over the idea that would "pre-empt" its use in all fields.  *Id.* at 3231.

The Supreme Court recently defined the scope of an unpatentable abstract idea in *Alice,* 134 S. Ct. 2347, particularly as that exception applies to computer-implemented inventions.  The Court specified a two-part test for identifying patents that claim abstract ideas instead of patent-eligible inventions.  First, a court must "identify the abstract idea represented in the claim."  *Id.* at 2353, *quoting Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012).  Then, the court must determine "whether the balance of the claim adds 'significantly more.'"  *Alice*, 134 S. Ct. at 2353.

8

There must be an "inventive concept" to ensure the patent in practice amounts to significantly more than an abstract idea. *Id.* at 2357. *Alice* makes clear that merely tying an abstract idea to a computer or the internet is not "significantly more" and not sufficient to transform that idea into a patent-eligible invention. *Id.* at 2358. Essentially, a patent must do more than simply state the abstract idea while adding the words "apply it with a computer." *Id.*

## IV.   THE CLAIMS OF THE ASSERTED PATENTS ARE NOT ELIGIBLE FOR PATENTABILITY UNDER 35 U.S.C. § 101

### A.   The Claims Of The '875 And '214 Patents Are Directed To An Abstract Idea: Selecting And Distributing Photos Of A Race Using A Bib Number Or Other Identifying Information.

The first prong under the *Alice* test is to determine whether the claims are directed to an abstract idea (*i.e.*, a "patent-ineligible concept"). *Alice,* 134 S. Ct. at 2353.

The claims of the '875 and '214 patents recite the abstract idea of selecting and distributing photos of a race using a bib number or other identifying information. Following the recited steps of claim 1 of the '875 and '214 patents, the idea of a photographer "taking" a photograph of a sporting event, "associating identifying data" (*e.g.*, a bib number) with each photograph, "informing" the participants of this data, "cataloging" each of the photographs by the data, and having users "search" for their photographs based upon this data for selection and ordering is a concept long prevalent for selecting photographs of sporting events. Prior to these patents, runners or other sporting event participants did not just at random select photographs and hoped that they appear in the photograph; rather, participants searched for an identifying data, such as their bib number, or a date and time they may have appeared in the photo, to select only the photographs where they appear. Indeed, the patent itself discusses how event photography has "traditionally relied on identifying markings" where the "name and mailing address of event participants who are identifiable by their bib number markings are then cross checked to an address roster" for mailing. Col. 1:18-19; 24-26. This

9

method, however, was described as requiring "several weeks or even months of time and is costly due to multiple mailings between the photographer and the event participants." Col. 1: 40-42.

The method claimed in the '875 and '214 patents is similar to the method the Supreme Court held invalid in *Alice* and *Bilski* for claiming abstract ideas. The claims invalidated in *Alice* were designed to facilitate the exchange of financial obligations between two parties by using a computer system as a third-party intermediary. *Alice*, 134 S. Ct. at 2354. The Supreme Court stated that the concept of intermediated settlement is "a fundamental economic practice long prevalent in our system of commerce." *Id.* at 2356. Similarly, in *Bilski*, the Court held it was an abstract idea for buyers and sellers of commodities to protect, or hedge, against the risk of price changes. *Bilski*, 130 S. Ct. at 3223. The Court stated that "hedging is a fundamental economic practice long prevalent in our system of commerce." *Id.* at 3231. The Court explained that the patentee was trying to patent the basic concept of hedging that "would effectively grant a monopoly over an abstract idea." *Id*.

The same reasoning applies here. The mere idea of selecting and distributing photographs of a race using some type of identifying data is a "practice long prevalent" in how participants select photos. *Id.* at 3223. And, similar to the claims in *Alice*, the claims here are designed to facilitate the selection and distribution of a photograph by using a computer network as an intermediary. *Alice*, 134 S. Ct. at 2354. This is a basic concept not entitled to patent protection.

The Federal Circuit has repeatedly invalidated claims under Section 101 for being too abstract where they recite a basic concept in their respective fields. *See, e.g. Planet Bingo, LLC v. VKGS LLC,* 2014 WL 4195188, at * 3 (Fed. Cir. Aug. 26, 2014) (holding that a computerized system for managing a bingo game comprising the steps of selecting, storing, assigning, and retrieving a set of numbers is an unpatentable abstract idea); *SmartGene, Inc. v. Advanced Biological Labs., SA,* 555 Fed. Appx. 950, 955 (Fed. Cir. 2014) (holding that a method for selecting a therapeutic condition comprising the steps of

10

providing patient information, generating a ranked listing of therapeutic treatments, and generating advisory information is an unpatentable abstract idea); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) (holding that processing car loan applications comprising the steps of receiving, obtaining, forwarding, and sending is an unpatentable abstract idea); *Bancorp Servs., L.L.C.,* 687 F.3d at 1273-74 (holding that a method for managing a life insurance policy comprising the steps of calculating fee units, calculating a surrender value, determining an investment value, calculating a policy value, storing the policy value, removing fee units, and accumulating fee units is an unpatentable abstract idea).

If anything, the abstract idea of selecting and distributing photographs of a race based on a bib number or other identifying information at the core of the claims in this case is simpler and more commonplace than the methods held unpatentable in the cases cited above.

This abstract idea is also found in the remaining independent claims of the '875 and '214 patents. Specifically, independent claims 16, 24, and 29 of the '875 patent and independent claims 11 and 17 of the '214 patent are all directed to the same basic concept, but limit the identifying data that the runner or sporting event participant utilizes beyond a bib number, such as the date and time the photograph was taken, or a code or number worn by the participant. Thus, all of the independent claims of the '875 and '214 patents are directed to an abstract idea under the first prong of the *Alice* test.

The dependent claims are directed to the same abstract idea with only minor variations. For example, with respect to the '875 patent, claim 2 recites that the identifying data can be posted; claims 3-10 recite a different type of identifying data that can be used; claim 11 recites an algorithm than can be used if the identifying data is based upon a time used to search for the photographs; claim 12 recites the use of a generic camera to download the photographs; claim 13 recites the additional step of ordering the photograph; claim 14 recites the additional step of mailing the photograph and claim 15 recites the step of emailing the photograph. The same series of dependent claims exists in

11

**MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

the '214 patent as well.  *See generally* '875 patent and '214 patent.  None of these dependent claims recite patentable subject matter.  *See Planet Bingo*, 2014 WL 4195188 at * 2 (invalidating all claims of the patent at issue because "there is no meaningful distinction between the method and system claims or between the independent and dependent claims.").  None of the dependent claims of the '875 and '214 patents meaningfully limit the claimed subject matter beyond the abstract idea of selecting and distributing sporting event photographs using identifying data.  The additional claims do not change the conclusion that the patents are directed to an abstract idea, they only add small variations to the way that idea is implemented.

## B.  The Claims Of The '035 Patent Are Directed To The Same Abstract Idea Found In The '875 And '214 Patents, But Further Adds The Abstract Idea of Putting Advertisements On The Photographs

Similar to the '875 and '214 patents, the claims of the '035 patent are directed to the abstract idea of selecting and distributing photographs of a race using a bib number or other identifying data.  The '035 patent, however, adds the additional abstract idea of inserting an advertisement using an electronic device.  *See, e.g.,* claim 1 of the '035 patent.

The specification states that "[T]he present invention also provides means for advertisers to directly advertise to the event participants.  Such advertisements can be a source of income for event photographers, event organizers or web hosting companies." '035 patent, col. 2:9-13.  The specification further states that "[T]here is also a continuing need for additional revenue streams to event photographers" and advertising fulfills that need.  '035 patent, col. 1:64-65.

The claims here are similar to the claims at issue in *Bilski* that the Supreme Court held were directed to "abstract ideas."  The Supreme Court characterized the claims in *Bilski* as efforts to patent "both the concept of hedging risk and the application of that concept to energy markets."  *Bilski,* 130 S. Ct. at 3229.  The Court concluded that the claims at issue in *Bilski* were unpatentable "because they are attempts to patent abstract

MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

ideas." *Id.* at 3229-30.  The prohibition against patenting abstract ideas, the Court explained, "'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment' or adding 'insignificant postsolution activity.'" *Id.* at 3230.

Here, trying to patent the abstract idea of "advertising" as applied to race or sporting event photography is similar to the abstract idea of "hedging" as applied to the energy market that the Supreme Court found ineligible.  *Id.* at 3231.

All independent and dependent claims of the '035 patent are directed to the same abstract idea with only minor variations.  For example, claim 2 specifies the type of identifying data used (*i.e.,* the time the photograph was captured, or the name of the participant, or the number); claim 3 requires the accessing of the database at a location other than the sporting event; claim 4 requires the posting of a photograph using a low quality resolution; claim 5 requires the advertisement to be in a corner or a margin of the photograph; and so forth.  None of these dependent claims recite patentable subject matter.  *See Planet Bingo*, 2014 WL 4195188 at * 2 (invalidating all claims of the patent at issue because "there is no meaningful distinction between the method and system claims or between the independent and dependent claims.").  These additional elements do not change the conclusion that the patent is directed to an abstract idea; they only add small variations to the way that idea is implemented.

Just like the vague, unapplied concept of hedging in *Bilski*, the idea of advertising is also basic, widely-known, and long prevalent in our system of commerce.  *Bilski*, 130 S. Ct. at 3231.  The concept of using advertising on photographs represents an abstract idea that without an "inventive concept" or something "significantly more" cannot be entitled to patent protection.

**MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

**C.     The Claims Of The '875 And '214 Patents Do Not Provide An "Inventive Concept" Sufficient To Transform The Claimed Abstract Idea Into A Patent-Eligible Invention.**

Step two of the *Alice* test requires that, when a claim involves an abstract idea, eligibility under section 101 requires that the claim involve something "significantly more." *Alice,* 134 S. Ct. at 2355.  The claims must contain an "inventive concept" sufficient to transform the claimed abstract idea into a patent-eligible invention.  *Id.* at 2357.  The claims here have no such inventive concept.  The claims merely take the abstract idea of selecting and distributing photographs of a race using a bib number or other identifying data, and "apply it" on a computer network.  *Alice* made clear this is not enough.  *Id.* at 2358.

In *Alice,* the Supreme Court held that the introduction of a computer into the claims did not render the claims patentable.  In analyzing step two of the test, the Court stated that "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."  *Id*.  Stating an abstract idea "while adding the words 'apply it with a computer' is not enough for patent eligibility."  *Id.*  The relevant question, the Court explained, "is whether the claims here do more than simply instruct the practitioner to implement the abstract idea of intermediated settlement on a generic computer."  *Id.* at 2359.  The Court stated that they did not because the function performed by the computer at each step of the claims was "purely conventional" and that the claims merely required "a generic computer to perform generic computer functions." *Id, quoting Mayo,* 132 S. Ct. at 1298.  The Court further stated that the claims at issue amounted to "nothing significantly more" than the abstract idea using "some unspecified, generic computer."  *Alice*, 134 S. Ct. at 2360.  The Court concluded that was "not 'enough' to transform an abstract idea into a patent-eligible invention."  *Id.*, *quoting Mayo*, 132 S. Ct. at 1297.

The same analysis applies here.  The role of the computer network in the claims of the '875 and '214 patents is limited to the basic functions of a generic computer network

14

1   that can merely store the photos on a web-site server for quicker selection and inspection.

2   Nothing in the claims purports to improve the functioning of the computer network itself,

3   other than the speed and convenience of basic computer functions such as calculation,

4   communication, and the display of information.  *See* Col. 5:22-26 ("All processing and

5   ordering of pictures is conducted electronically, alleviating the material and shipping costs

6   typically associated with such transactions as well as significantly reducing the time in

7   which an event participant can receive photographs of the event.").

8          As stated above, the basic concept of claim 1 of the '875 and '214 patents could be

9   performed manually.  A photographer can take photographs of a sporting event, associate

10  each photograph with identifying data (*e.g.*, a bib number), inform the participants of their

11  bib numbers, catalog each of the photographs by bib number, and send them to the

12  participants for selection and ordering.  Indeed, the patent acknowledges how this process

13  was performed manually in the prior art.  '875 patent, col.1:18-46.  The fact that a

14  computer might make the otherwise human process go faster is not an "inventive

15  concept."  *Alice*, 134 S. Ct. at 2358; *see also BuySAFE, Inc. v. Google, Inc.*, 964 F. Supp.

16  2d. 331, 336 (D. Del. 2013) ("[T]he patent's process would be performed exactly the same

17  way by a person and by a computer, the only difference being that the computer performs

18  the process significantly faster than a human.  Such a process is not patent-eligible.");

19  *Dealertrack, Inc.*, 674 F.3d at 1333 (Fed. Cir. 2012), *quoting SiRF Tech., Inc. v. Int'l*

20  *Trade Comm'n*, 601 F.3d 1319, 1333 (Fed. Cir. 2010) ("In order for the addition of a

21  machine to impose a meaningful limit on the scope of a claim, it must play a significant

22  part in permitting the claimed method to be performed, rather than function solely as an

23  obvious mechanism for permitting a solution to be achieved more quickly, *i.e.*, through

24  the utilization of a computer for performing calculations.").

25         The Federal Circuit has repeatedly been faced with applicants trying to avoid the

26  ban on abstract ideas by adding a reference to a general purpose computer.  The Federal

27  Circuit, however, has routinely held that computerizing a conventional method does not

28  make the idea patentable.  *See, e.g., Digitech Image Techs., LLC v. Electronics for*

**MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

1    *Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014); *Accenture Global Servs. v. Guidewire*

2    *Software Inc.*, 728 F.3d 1336 (Fed. Cir. 2013); *Bancorp Servs.*, 687 F.3d 1266;

3    *Dealertrack, Inc.*, 674 F.3d 1315; *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d

4    1366 (Fed. Cir. 2011).

5       Indeed, in the past three months alone, after the *Alice* decision¸ courts have

6    continued to find that computerizing a conventional method is not patentable.  For

7    example, in *Eclipse IP*, CV-14-154 (C.D. Cal. Sept. 4, 2014), the Court held that three

8    different patents claiming a computerized method for a notification system were invalid.

9    The patentee had argued that because the method is performed "in connection with a

10    computer-based notification system," the claims cannot be held invalid.  *Id.* at p. 10.  The

11    Court disagreed and stated that "the claims, read in light of the specification, were

12    deliberately drafted to recite hardware in only the most generic sense.  Recitation of such

13    generic hardware is sufficient." *Id. See also Planet Bingo,* 2014 WL 4195188 (Fed. Cir.

14    Aug. 26, 2014) (computerized system for managing a game of Bingo held invalid); *Every*

15    *Penny Counts, Inc. v. Wells Fargo Bank,* No. 8-11:CV-2826-T (M.D. Florida Sept. 11,

16    2014) (computerized application to accumulate large savings from a small savings);

17    *Loyalty Conversion Systems Corp. v. American Airlines, Inc.*, No. CV 13-655, Dkt. 129

18    (E.D. Tex. September 3, 2014) (computerized method for rewarding loyalty credits held

19    invalid); *Walker Digital v. Google, Inc.*, 2014 WL 4365245 (D. Del. September 3, 2014)

20    (computerized method to facilitate an exchange of identities held invalid); *CMG Financial*

21    *Services, Inc.,* No. CV 11-10344-PSG (C.D. Cal. Aug. 29, 2014) (computerized automatic

22    method to provide a line of credit to a mortgagee held invalid);

### D. The Claims Of The '035 Patent Do Not Provide An "Inventive Concept" Sufficient To Transform The Claimed Abstract Idea Into A Patent-Eligible Invention.

25       Similar to the '875 and '214 patents, the '035 patent fails the second prong of *Alice*

26    because there is no "inventive concept" that transforms the abstract idea.  The patent

27    claims the use of a generic "electronic device" to perform the abstract idea of inserting an

advertisement in the photograph.  The specification makes clear than any generic electronic device will suffice.  '035 patent, col. 6:12-14 ("advertiser fields are created in the digital photograph 38 using an electronic device, such as a computer.").  And the use of a generic electronic device, or generic computer, is not something "significantly more" to transform the abstract idea into a patent eligible invention.  Just as the "computer" of *DealerTrack*, the "information processor" of *Compression Technologies*, and the "network," "devices," and "computer system" of *OIP* Technologies were not limitations sufficiently meaningful to transform ideas into inventions, the "electronic device" claimed in the '035 patent is simply a general purpose computer that cannot save the claims.

The Supreme Court in *Alice* explicitly warned that "[g]iven the ubiquity of computers . . . [a] wholly generic computer implementation is not generally the sort of 'additional feature' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'"  *Alice*, 134 S. Ct. at 2358.  "The mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."  *Id.*  Yet such a wholly generic "electronic device" is the only possible thing — beside the abstract idea itself — recited by the claims.

Put differently, the claims of the '035 patent are not directed to a specific and inventive implementation but to a concept (or idea) that may be implemented with a wide variety of entirely conventional devices.  Because the claims lack any meaningful limitation relating to computer implementation, the claims of the '035 patent preempt all known and unknown uses of the idea of using advertising in the race or sporting event photography industry.  *See Prometheus,* 132 S. Ct. at 1321.  Essentially, the reference to an electronic device does nothing more than identify a technological field (*i.e.*, racing or sporting event photography) and attempt to monopolize use of the idea in that field.

17

# V.    CONCLUSION

The asserted patents are invalid because they all claim an abstract idea using generic and conventional computer technology.  This is insufficient to transform the idea into a patent-eligible invention under 35 U.S.C. § 101.


Dated:  September 15, 2014          **ONE LLP**


By:  _____

John E. Lord

*Attorneys for Defendants,*
CAPSTONE PHOTOGRAPHY, INC.
AND MICHAEL SKELPS

**MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**