1   Daniel M. Cislo, Esq., No. 125,378
      *dan@cislo.com*
2   Peter S. Veregge, Esq., No. 155,769
      *pveregge@cislo.com*
3   CISLO & THOMAS LLP
    1333 2nd Street Suite 500
4   Santa Monica, California 90401-4110
    Telephone:  (310) 451-0647
5   Telefax:  (310) 394-4477

6   Attorneys for Plaintiff,
    PETER WOLF

7

8

9                     **UNITED STATES DISTRICT COURT**

10                    **CENTRAL DISTRICT OF CALIFORNIA**

11

12   PETER WOLF, an individual,            ) CASE NO. CV 13-9573 CAS (PJWx)
                                           )
13                  Plaintiff,             ) **PLAINTIFF'S OPPOSITION TO**
                                           ) **DEFENDANT'S MOTION FOR**
14        vs.                              ) **JUDGMENT ON THE PLEADINGS**
                                           )
15                                         )
                                           )
16   CAPSTONE PHOTOGRAPHY, INC., a         )
     Connecticut corporation, MICHAEL     ) **DECLARATION OF PETER**
17   SKELPS, an individual, and DOES 1-    ) **VEREGGE AND DECLARATION**
     10, inclusive,                        ) **OF PETER WOLF FILED**
18                                         ) **CONCURRENTLY HEREWITH**
                                           )
19                                         )
                  Defendants.              ) DATE:  October 20, 2014
20                                         ) TIME:  10:00 A.M.
                                           ) COURTROOM:  5
21                                         ) JUDGE: Hon. Christina A. Snyder
                                           )
22   ────────────────────────────────────)

23

24

25

26

27

28

                                    0

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................ 1

II.   ARGUMENT ...................................................................................... 4

      A.    Defendants' Motion is Premature ...................................... 4

            1.    This Motion Attempts to Circumvent Court-Ordered
                  Claim Construction ...................................................... 4

            2.    Section 101 Guidelines Are Not Well Established ........ 6

      B.    Defendants Have Failed to Meet Their Burden ................ 7

            1.    Defendants Must Prove Invalidity by Clear and
                  Convincing Evidence .................................................... 7

            2.    Defendants Failed to Analyze All of the Claims or Even
                  All the Claim Elements of the Independent Claims ........ 8

            3.    The Necessary Facts Are Unavailable in a Motion on the
                  Pleadings ...................................................................... 9

      C.    Alice Requires a Two Part Test for Patent Eligibility ...... 10

            1.    The Abstract Idea Must Be Properly Framed ............ 10

            2.    Proper Statement of the Alleged "Abstract Idea" ...... 12

            3.    When the Abstract Idea is Properly Stated, and Each
                  Claim Element Is Analyzed Both Individually and As an
                  Ordered Combination, the Patents Do Not Claim an
                  Abstract Idea .............................................................. 14

            4.    Even if the Claims Fail Part One of the Alice Test, They
                  Have a Sufficient "Inventive Concept" to Withstand Part
                  Two ............................................................................ 19

                  i.    The Patents in Suit Claims are Sufficiently Limited
                        to Contain an Inventive Concept ...................... 20

i

ii.     The asserted claims are significantly more than the "abstract idea" ..............................................................20

D.     The Patent Claims Are Not Abstract Because They Do Not Disproportionately Tie Up the Use of the Underlying Ideas .............23

E.     The Computer Adds a Meaningful Limitation, But Even if it Does Not, the Claim Elements are Sufficiently Limited ...................24

III.     CONCLUSION ..........................................................................25

CISLO & THOMAS LLP
Attorneys at Law
SUITE 500
1333 2ND STREET
SANTA MONICA, CALIFORNIA 90401-4110
TELEPHONE: (310) 451-0647     FACSIMILE: (310) 394-4477
WWW.CISLO.COM

# **TABLE OF AUTHORITIES**

**Cases**

Alice Corporation Pty. Ltd. v. CLS Bank Int'l,
134 S. Ct. 2347, 189 L. Ed. 2d 296 (2014) .....................................................passim

Autoform Eng'g GMBH v. Eng'g Tech. Assocs.,
2014 U.S. Dist. LEXIS 123684 (E.D. Mich. Sept. 5, 2014)................8, 11, 20, 21

Bancorp Svc. v. Sun Life Assur. Co. of Canada,
687 F.3d 1266 (Fed. Cir. 2012)............................................................................4

Bilski v. Kappos,
130 S. Ct. 3218, 561 U.S. 593, 177 L. Ed. 2d 792 (U.S. 2010).....................11, 14

buySAFE, Inc. v. Google, Inc.,
2014 U.S. App. LEXIS 16987 (Fed. Cir. Sept. 3, 2014) .................................11

Comcast IP Holdings I, LLC v. Sprint Communs. Co. L.P.,
2014 U.S. Dist. LEXIS 96289 (D. Del. July 16, 2014) ...................................12

CyberSource Corp. v. Retail Decisions, Inc.,
654 F.3d 1366 (Fed. Cir. 2011)........................................................................11

Data Distrib. Techs., LLC v. Brer Affiliates, Inc.,
2014 U.S. Dist. LEXIS 115543 (D.N.J. Aug. 19, 2014) ...............................5, 12

Diamond v. Diehr,
450 U.S. 175, 101 S. Ct. 1048, 67 L.Ed.2d 155 (1981)..................................5, 16

Eclipse IP LLC v. McKinley Equip. Corp.,
2014 U.S. Dist. LEXIS 125395 (C.D. Cal. Sept. 4, 2014) .................................12

Gametek LLC v. Zynga, Inc.,
2014 U.S. Dist. LEXIS 58061 (N.D. Cal. Apr. 25, 2014) ................................5

Genetic Techs. Ltd. v. Agilent Techs., Inc.,
2014 U.S. Dist. LEXIS 31474 (N.D. Cal. Mar. 7, 2014).................................15

Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.,
2014 U.S. Dist. LEXIS 122244 (E.D. Tex. Sept. 2, 2014) .................................12

CISLO & THOMAS LLP
Attorneys at Law
SUITE 500
1333 2ⁿᵈ STREET
SANTA MONICA, CALIFORNIA 90401-4110
TELEPHONE: (310) 451-0647 · FACSIMILE: (310) 394-4477
WWW.CISLO.COM

Mayo Collaborative Svc. v. Prometheus Lab., Inc.,
    132 S. Ct. 1289, 566 U.S. 10, 182 L. Ed. 2d 321 (2012)..............................passim

McRo, Inc. v. Namco Bandai Games Am.,
    2014 U.S. Dist. LEXIS 135212 (C.D. Cal. Sept. 22, 2014) ......................7, 22, 23

Michael Sandborn & Mark Sandborn P'ship v. Avid Tech., Inc.,
    2013 U.S. Dist. LEXIS 126772 (D. Mass. Sept. 5, 2013) ......................................5

Phillips v. AWH Corp.,
    415 F. 3d 1303 (Fed. Cir. 2005)..........................................................................4

Planet Bingo, LLC v. VKGS LLC,
    2014 U.S. App. LEXIS 16412 (Fed. Cir. Aug. 26, 2014) ..................................11

Planet Bingo, LLC v. VKGS, LLC,
    961 F. Supp. 2d 840 (W.D. Mich 2013) ...............................................................5

SRAM Corp. v. AD-II Eng'g, Inc.,
    465 F.3d 1351 (Fed. Cir. 2006)............................................................................8

Tuxis Techs., LLC v. Amazon.com, Inc.,
    2014 U.S. Dist. LEXIS 122457 (D. Del.Sept. 3, 2014)......................................12

Ultramercial, Inc. v. Hulu, LLC,
    722 F.3d 1335 (Fed. Cir. 2013)....................................................................passim

Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA LLC,
    2014 U.S. Dist. LEXIS 32500 (N.D. Ill. Mar. 13, 2014).....................................5

Walker Digital, LLC v. Google, Inc.,
    2014 U.S. Dist. LEXIS 122448 (D. Del. Sept. 3, 2014).....................................12

WildTangent, Inc. v. Ultramercial, LLC,
    134 S. Ct. 2870 (2014) .........................................................................................8

Zillow, Inc. v. Trulia, Inc.,
    2013 U.S. Dist. LEXIS 127606 (W.D. Wash. Sept. 6, 2013)...............................5

iv

# I. <u>INTRODUCTION</u>

Defendants' Motion is premature for a variety of reasons.  First, this motion attempts to circumvent the Court's scheduled claim construction.  Although Defendants assert that no claim construction is needed (but fail to state how the claim elements should be construed), in discovery responses they conversely assert that various independent claim elements are insufficiently described in the patent specification.  This response strongly suggests that these elements require claim construction based on other evidence, such as the prosecution history, expert opinion, or other extrinsic evidence that is not allowed in a motion for judgment on the pleadings.  Thus, before the Court can analyze whether the claim elements are patent ineligible, they should be subject to formal claim construction.

Second, this motion also attempts to circumvent the Court's mandate stated during the Scheduling Conference, that before a party can file an early summary judgment motion it must first have a status conference with the Court.  Defendants' counsel is aware of this mandate, but stated that it only applied to summary judgment motions.  Given the potentially dispositive nature of this motion, Defendant's counsel should have arranged a status conference prior to filing.

Third, there is insufficient guidance for district courts to decide these motions in all but the most obvious cases of patent ineligibility.  The Supreme Court decisions in this area, the most recent being <u>Alice Corporation Pty. Ltd. v. CLS Bank Int'l</u>, 134 S. Ct. 2347, 189 L. Ed. 2d 296 (2014), are so vague that former Federal Circuit Chief Judge Paul Michel says there is no way to judge patent eligibility anymore.  Are all patents merely abstract ideas?  The Court may not want to wade into deciding patent eligibility before further appellate guidance is better developed and a factual record with regard to what the claim terms really mean to a person of ordinary skill in the art.

Fourth, this motion was filed in the midst of renewed settlement negotiations for tactical advantage.  Ever since the mediation, plaintiff Peter Wolf has been trying

CISLO & THOMAS LLP
Attorneys at Law
SUITE 500
1333 2ⁿᵈ STREET
SANTA MONICA, CALIFORNIA 90401-4110
TELEPHONE: (310) 451-0647   FACSIMILE: (310) 394-4477
WWW.CISLO.COM

1  to reach out to defendant Michael Skelps, but Defendants instead filed this motion,

2  thinking it would enhance their settlement prospects.

3      But even if this motion is not premature, Defendants have not met their

4  burden to prove patent ineligibility by clear and convincing evidence.  Their brief is

5  long on case citations, but short on any actual analysis of the claims at issue.

6  Defendants fail even the first element of the two-part test set forth in Alice.

7  Defendants failed to provide a clear statement of the abstract idea that is patent

8  ineligible.  Rather, Defendants' discussion of the "abstract idea" changes with each

9  claim element it addresses.  Compounding that problem, Defendants also fail to

10 construe a single claim element, which makes it impossible to determine whether

11 those claim elements add "something else" sufficient to overcome patent

12 ineligibility, the second part of the Alice test.  Effectively the Defendants are asking

13 the Court to do all the heavy lifting of: (a) crafting an appropriate statement of the

14 abstract idea, (b) construing the claims, and (c) analyzing whether the claims

15 elements add sufficient limitations to the abstract idea to make them patent eligible.

16     The three patents-in-suit collectively have 84 claims, 10 of which are

17 independent.  Yet Defendants only quote 2 claims in their brief, and give all the rest

18 an incredibly broad brush, requiring the Court to analyze the other 81 claims on its

19 own.  Even in the claim Defendants "analyzed," they discuss only participant bib

20 numbers as the identifying data.  They gloss over all the other identifying data listed

21 in Claim 1, including "a participant's name, a code acquired from a component worn

22 by a participant, and a date and time, including hour and minute the photograph was

23 taken."  Defendants cite no prior art that would make these elements commonplace.

24     Defendants' motion also lacks sufficient prior art facts.  The prior art recited

25 in the patent specification only addresses the use of bib numbers—and only as used

26 by the photographer, not by the participants and public as recited in the claims.  As a

27 result, Defendants attempt to lump all the independent and dependent claim

28 elements into the same pile, asserting without support that using these elements was

commonplace.  Without a more detailed analysis of the claims, and Defendants being able to establish, <u>by clear and convincing evidence</u> of the history of the use of elements recited in those claims, this motion must be denied.

Even if this Court finds that sufficient facts are available to decide the issue, the patents only lay claim to a patent-eligible *application* of an abstract idea, and not the abstract idea itself.  <u>Alice</u> states that if claims are directed to an abstract idea, the Court must consider *all* the elements of *each* claim, both individually and as an ordered combination, to determine whether the additional elements transform the claim into a patent-eligible application.  If a claim is not so transformed by that analysis, the second part of the test determines if the claims have a sufficient "inventive concept," a combination of elements sufficient to ensure that the patent amounts to significantly more than a patent upon the ineligible concept itself.

The patents-in-suit claims are not invalidated by these tests because they contain sufficient concrete limitations that do not claim the abstract idea itself, but only a patent-eligible *application* of that idea.  Defendants botch the analysis by identifying numerous abstract ideas that incorporate specific claim limitations, rather than a single, broad abstract idea.  For example, the <u>Bilski</u> and <u>Alice</u> cases cited by Defendants were for classic financial transactions that had been in existence for decades, and whose abstract idea were expressed in a few words that did not incorporate claim elements: "price hedging" and "intermediated settlement."

Thus, an appropriate statement of the abstract idea of the patents in suit would be "a method for providing event photographs."  This abstract idea was commonplace at the time the patent applications were filed.  But when the claim limitations are added to the abstract idea, it becomes apparent that the elements are sufficiently limiting to result in a patent-eligible *application* of the idea, and not a claim to the abstract idea itself.  Thus, the claims meet the patent eligibility test under both parts of the test set forth in <u>Alice</u> and <u>Prometheus</u>.

CISLO & THOMAS LLP
*Attorneys at Law*
SUITE 500
1333 2ⁿᵈ STREET
SANTA MONICA, CALIFORNIA 90401-4110
TELEPHONE: (310) 451-0647   FACSIMILE: (310) 394-4477
WWW.CISLO.COM

The exclusions to patent eligibility are driven by pre-emption, specifically whether the patent claims will monopolize the basic tools of scientific and technological work.  But the claims of the patents-in-suit do not monopolize the field of event photograph distribution, because other methods of distribution exist that do not infringe the claims.  Thus, the claims are patent-eligible.  Defendants' motion should be denied.

## II. <u>ARGUMENT</u>

**A.    Defendants' Motion is Premature**

### 1.  This Motion Attempts to Circumvent Court-Ordered Claim Construction

The Court ordered a claim construction process to be completed between April-May 2015 (Docket 23).  Defendants attempt to circumvent that process by asserting that claim construction is unnecessary because it would not clarify the Court's understanding, as "the relevant terms are clear." (Motion at 8).  Defendants' premature Motion should not force Plaintiff to provide its claim constructions now, in advance of the schedule set by the Court.[1]  That schedule is set far enough out for the parties to engage in discovery, and if needed, obtain expert opinions as to how the claims would be interpreted by one of ordinary skill in the art.  <u>Phillips v. AWH Corp.</u>, 415 F. 3d 1303, 1317 (Fed. Cir. 2005) (courts may use extrinsic evidence and expert testimony to establish ordinary skill in the art).

Defendants cite <u>Bancorp Svc. v. Sun Life Assur. Co. of Canada</u>, 687 F.3d 1266, 1273 (Fed. Cir. 2012) for the proposition that claim construction is not required before deciding patent eligibility.  The court also said "however, that it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." <u>Id.</u> at 1273-74.

---

[1]   If Defendants had arranged a status conference prior to filing this potentially dispositive early Motion, the Court could have addressed this issue.  Defendants cannot blame anyone but themselves for creating this problem.

4

CISLO & THOMAS LLP
Attorneys at Law
SUITE 500
1333 2ND STREET
SANTA MONICA, CALIFORNIA 90401-4110
TELEPHONE: (310) 451-0647   FACSIMILE: (310) 394-4477
WWW.CISLO.COM

In fact, many courts have waited until claim construction is completed before analyzing Section 101 validity.  For example, in Data Distrib. Techs., LLC v. Brer Affiliates, Inc., 2014 U.S. Dist. LEXIS 115543 (D.N.J. Aug. 19, 2014), the court noted that given the patent's 100 claims, the statutory presumption of validity, the "clear and convincing" evidentiary burden, and the lack of Plaintiff's proposed constructions or any agreement about claim construction, it was advisable to postpone adjudication of patent eligibility until claim construction had been established.  *See also* Michael Sandborn & Mark Sandborn P'ship v. Avid Tech., Inc., 2013 U.S. Dist. LEXIS 126772 (D. Mass. Sept. 5, 2013) (denying motion because claim construction will define claim limitations); Zillow, Inc. v. Trulia, Inc., 2013 U.S. Dist. LEXIS 127606, *22-23 (W.D. Wash. Sept. 6, 2013) (denying motion until claim construction); Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA LLC, 2014 U.S. Dist. LEXIS 32500, *14 (N.D. Ill. Mar. 13, 2014) (denying motion until claim construction); Planet Bingo, LLC v. VKGS, LLC, 961 F. Supp. 2d 840, 842 (W.D. Mich 2013) (denied prior motion until claim construction completed); *cf.* Gametek LLC v. Zynga, Inc., 2014 U.S. Dist. LEXIS 58061 (N.D. Cal. Apr. 25, 2014) (using Plaintiff's claim construction brief to adopt its construction).

The rationale of these cases applies here because the parties have conflicts about certain claim elements.  In their discovery responses, Defendants asserted that the terms "associating identifying data" and "cataloging each of the photographs in a web-site server" found in independent claims 1, 11, and 17 of the '214 patent and independent claims 1, 16, and 24 of the '875 patent are not sufficiently described by the specification.[2]  (Veregge Decl. ¶ 2, Exh. 2).  Thus, for this motion, those terms need to be construed, likely using the patent's extensive prosecution history, which took six years and numerous claim amendments before granting, or other extrinsic

---

[2]  Although Defendants made those allegations as a § 112 defense, § 101 is not the statutory tool to address § 112 issues, and courts have warned against doing so.  *See, e.g.,* Prometheus, 132 S. Ct. at 1304; Diehr, 450 U.S. at 190 (1972); Ultramercial, 722 F.3d at 1347, 1354.

CISLO & THOMAS LLP
*Attorneys at Law*
SUITE 500
1333 2ND STREET
SANTA MONICA, CALIFORNIA 90401-4110
TELEPHONE: (310) 451-0647   FACSIMILE: (310) 394-4477
WWW.CISLO.COM

evidence that is not available for a judgment on the pleadings. Similarly, Defendants also assert that the '214 patent and '875 patent fail to adequately define the terms "informing the sporting event competitors" and "searching for a photograph." (Id.). Most of these terms, or similar variations, are also found in the '035 Patent claims. Thus, those terms would have to be construed in order to determine whether they cover an abstract idea.

In response to another interrogatory, Defendants assert that "Capstone does not inform event participants of how to find photographs of the sporting event," a claim element present in all of the '875 and '214 Patent claims. (Id. at ¶ 3, Exh. 3). Thus, Capstone knows how it wants to define "informing," yet as explained above, also wants to assert that its meaning is too undefined to support the claim. Defendants cannot have it both ways. More importantly, Defendants' assertion that Capstone does not perform the "informing" step that is present in every claim—while Plaintiff asserts infringement—presents a clear dispute on how the "informing" step is construed by the Parties. Claim construction is required to resolve this.

It is disingenuous for Defendants to assert that these terms are inadequately defined in the specification, while simultaneously asserting their meaning is plain enough so that this Court can construe them without assistance to determine Section 101 invalidity. Defendants' motion should be denied.[3]

## 2. Section 101 Guidelines Are Not Well Established

Each of the Supreme Court's recently decided Section 101 cases have thrown successively more vagueness into the analysis of patent eligibility. At the moment, there is insufficient guidance for district courts to decide these motions in all but the most obvious cases of patent ineligibility. In the wake of the most recent decision in

---

[3]   If the Court opts to construe the patents anyway, it must adopt a construction that is most favorable to the patentee. Ultramercial, 722 F.3d at 1349 (stating that even with such a patentee-favorable construction, "it may be that formal claim construction will still be required to determine the merits of eligibility").

CISLO & THOMAS LLP
Attorneys at Law
SUITE 500
1333 2ND STREET
SANTA MONICA, CALIFORNIA 90401-4110
TELEPHONE: (310) 451-0647   FACSIMILE: (310) 394-4477
WWW.CISLO.COM

CISLO & THOMAS LLP
Attorneys at Law
SUITE 500
1333 2ND STREET
SANTA MONICA, CALIFORNIA 90401-4110
TELEPHONE: (310) 451-0647   FACSIMILE: (310) 394-4477
WWW.CISLO.COM

<u>Alice Corporation Pty. Ltd. v. CLS Bank Int'l</u>, 134 S. Ct. 2347, 189 L. Ed. 2d 296 (2014), a number of courts have decided Section 101 patent eligibility on motions for judgment on the pleadings.  Other courts have opted to take the safer route by waiting until claim construction is completed.  But all these courts have undertaken the analysis with only the thinnest framework imaginable provided by the Supreme Court.  In fact, former Chief Judge of the Federal Circuit, Paul Michel, stated that in view of <u>Alice</u>, "you can't tell if something is patent eligible or not because the tests provided in these cases are so vague, so subjective, so personal."[4]  Even Judge Wu of the Central District, in a very recent opinion, stated that the <u>Alice</u> test really boils down to Justice Potter Stewart's most famous phrase: "But I know it when I see it …"[5] suggesting the analysis is wholly subjective.[6]  Nor has the Federal Circuit had sufficient time to provide guidance on how the vague tests are to be applied, as only three Section 101 appellate cases have cited the <u>Alice</u> opinion (plus one concurring opinion), and all those cases have very different claims than the ones at issue here.  As shown below, even Defendants have not fully grasped the analytical framework for patent eligibility.  The Court may not want to wade into making an early determination of patent eligibility before appellate guidance is better developed.

**B.    Defendants Have Failed to Meet Their Burden**

**1.   Defendants Must Prove Invalidity by Clear and Convincing Evidence**

Any attack on an issued patent based on patent-eligible subject matter requires "a high level of proof."  <u>Ultramercial, Inc. v. Hulu, LLC</u>, 722 F.3d 1335, 1342 (Fed.

---

[4]  "The problem with this decision is that it has created vast uncertainty," [Michel] said of <u>Alice</u>.  "Now, none of the four categories (under Section 101 of the Patent Act) are clear anymore."  Karmasek, J., <u>U.S. SC created confusion with June patent decision, former Federal Circuit judge says</u>, *The Southeast Texas Record*, September 15, 2014.  http://setexasrecord.com/news/298598-u-s-sc-created-confusion-june-patent-decision-former-federal-circuit-judge-says (*See* Veregge Decl. ¶ 4, Exh. 4).

[5]  <u>McRo, Inc. v. Namco Bandai Games Am.</u>, 2014 U.S. Dist. LEXIS 135212, *17-18 (C.D. Cal. Sept. 22, 2014).

[6]  The Federal Circuit has condemned such subjective analysis: "The district court improperly made a subjective evaluation that these limitations did not meaningfully limit the 'abstract idea at the core' of the claims."  <u>Ultramercial</u>, 722 F.3d at 1352.

Cir. 2013), *vacated and remanded on other grounds*, <u>WildTangent, Inc. v. Ultramercial, LLC</u>, 134 S. Ct. 2870 (2014).  Pursuant to 35 USC § 282(a), an issued patent is presumed valid.  In order to successfully challenge this presumption, Defendants must submit **clear and convincing evidence** of patent invalidity.  *See* <u>Autoform Eng'g GMBH v. Eng'g Tech. Assocs.</u>, 2014 U.S. Dist. LEXIS 123684, *8 (E.D. Mich. Sept. 5, 2014), citing <u>Ultramercial</u>, 722 F.3d at 1342; and <u>SRAM Corp. v. AD-II Eng'g, Inc.</u>, 465 F.3d 1351, 1357 (Fed. Cir. 2006).  As demonstrated below, Defendants have not met this very high burden.

### 2. Defendants Failed to Analyze All of the Claims or Even All the Claim Elements of the Independent Claims

The Federal Circuit requires that "the question of eligible subject matter must be determined on a claim-by-claim basis."  <u>Ultramercial</u>, 722 F.3d at 1340.  Moreover, the first part of the <u>Alice</u> test requires the Court to "consider **the elements** of **each claim** both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application."  <u>Alice</u>, 134 S. Ct. at 2355 (emphasis added) quoting <u>Mayo Collaborative Svc. v. Prometheus Lab., Inc.</u>, 132 S. Ct. 1289, 1298, 566 U.S. 10, 182 L. Ed. 2d 321 (2012).  The <u>Alice</u> court reiterated that all claim elements must be considered, both individually and in combination, so that the patent claims are considered as a whole.  134 S. Ct. at 2355, n.3.

Defendant's motion asserts that all the claims in the patents-in-suit are invalid.  Collectively, the patents-in-suit have 84 claims, 10 of which are independent.  Defendants have failed to provide <u>any</u> claim construction, leaving it for the Court, which the Federal Circuit cautions against:  "Construing every asserted claim and then conducting a § 101 analysis may not be a wise use of judicial resources."  <u>Ultramercial</u>, 722 F.3d at 1340.

Despite the 84 claims, Defendants' motion only quotes two claims, and gives all the rest an incredibly broad brush, with this summary analysis for all three

8

patents: "None of these dependent claims recite patentable subject matter." (Motion at 12 and 13). This conclusory "analysis" of the 74 dependent claims is hardly claim-by-claim, much less an analysis of **each claim element** required by <u>Alice</u>.

Even in the two claims the Motion quotes, it fails to analyze every claim element. For example, Defendants only discuss bib numbers as the identifying data (Motion at 11), and gloss over all the other photo identifying data listed in the claims, including "a code acquired from a component worn by a participant, and a date and time, including hour and minute the photograph was taken." ('875 and '214 Patents, claim 1). Defendants list those identifying data, but fail to *analyze* how associating those specific and concrete types of identifying data with a photo and using this identifying data to search for and retrieve the photo is (a) an abstract idea, (b) if it was ever done before, or (c) how it might be so broad as to disproportionately tie up the use of the underlying ideas. It should not be up to the Court or Plaintiff to provide this analysis. Defendants have not met their burden.

### 3. The Necessary Facts Are Unavailable in a Motion on the Pleadings

Nor have Defendants met their burden to establish the necessary facts. The question of whether subject matter is patent-eligible, "while ultimately a legal determination, is rife with underlying factual issues." <u>Ultramercial</u>, 722 F.3d at 1339. Although Defendants may point to the patent specifications for some of what the prior art discloses, much of the prior art and state of the art at the time of the patent applications is not contained in the patents. For example, one of Plaintiff's competitors, who started shortly after Plaintiff, stated in an interview that at the time it started, event participants had never searched for their own photos, and had to be convinced to do so. (Wolf Decl. ¶ 7, Exh. 1). As stated in the patent specification, in the prior art the <u>photographer</u> inspected each photograph and searched for bib numbers, then printed a thumbnail of each photo and mailed it to the participant. In the '875 and '214 patents, however, it is the <u>participant</u> and public who can now search for the photographs. It may seem commonplace now to search for event

9

CISLO & THOMAS LLP
Attorneys at Law
SUITE 500
1333 2ⁿᵈ STREET
SANTA MONICA, CALIFORNIA 90401-4110
TELEPHONE: (310) 451-0647   FACSIMILE: (310) 394-4477
WWW.CISLO.COM

photographs on the Internet, but prior to Peter Wolf doing it for sporting event photography in 1999, it simply had not been done.  (Id. ¶¶ 3-6).  Such evidence controverts Defendant's assertion that claim elements were commonplace. Defendants cannot establish the state of the prior art necessary for their analysis, nor can Plaintiff properly counter it, in a motion for judgment on the pleadings.

## C.   Alice Requires a Two Part Test for Patent Eligibility

Even if this Court finds there are sufficient facts to decide this Motion, the patents do not impermissibly lay claim to the abstract idea itself, but only a patent-eligible *application* of that idea.  For the first part of the patent eligibility test, the Court must determine whether the claims at issue are directed to a patent-ineligible concept, such as an abstract idea.  Alice, 134 S. Ct. at 2355.  If so, the Court must then consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application.  Id.  If this analysis yields a patent-eligible application, the analysis stops; the patent is valid.

If not, the Court proceeds to the second part of the Alice test, to search for an "inventive concept," *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to "significantly more" than a patent upon the ineligible concept itself.  Id.  Although the Supreme Court asserts the two tests are separate, it can be difficult to segregate them because they appear to focus on the same question: whether the claim elements point to the abstract idea itself, or a patent-eligible *application* of that idea.

### 1.  The Abstract Idea Must Be Properly Framed

The starting point for any analysis of patent eligibility is the proper phrasing of the "abstract idea" applied or relied upon by the invention.   "Defining 'abstractness' has presented difficult problems, particularly for the § 101 'process' category."  Ultramercial, 722 F.3d at 1342.  If the abstract idea is stated with too much detail, then many patent claims that include limitations amounting to

CISLO & THOMAS LLP
Attorneys at Law
SUITE 500
1333 2ND STREET
SANTA MONICA, CALIFORNIA 90401-4110
TELEPHONE: (310) 451-0647  FACSIMILE: (310) 394-4477
WWW.CISLO.COM

"significantly more" than an otherwise ineligible concept would be improperly excluded from patent protection.  Courts are careful to not construe the implied exclusions so as to encompass all patents that apply or rely on any of the excluded basic principles.  <u>Alice</u>, 134 S. Ct. at 2354.

Furthermore, under the standard set forth in <u>Alice</u> and other cases on point, a patent or set of patent claims relies upon a single "abstract idea," not multiple different "abstract ideas" depending upon the particular claim limitation being considered.  Along these same lines, the "abstract idea" analysis focuses on the patent claims as a whole and not on an individual claim or claim limitation.  Cases that have analyzed an abstract idea under 35 U.S.C. § 101 have defined the single abstract idea in terms that use non-specific language, such as the following:

- "concepts in the design of sheet metal forming tools" – <u>Autoform</u>, 2014 U.S. Dist. LEXIS 123684, *7 (E.D. Mich. Sept. 5, 2014) (additional claim limitations narrowed the claims to cover less than the abstract idea);

- "the concept of intermediated settlement, i.e., the use of a third party to mitigate settlement risk" – <u>Alice</u>, 134 S. Ct. at 2356;

- "the concept of hedging risk and the application of that concept to energy markets" – <u>Bilski v. Kappos</u>, 130 S. Ct. 3218, 3229, 561 U.S. 593, 177 L. Ed. 2d 792, 806 (U.S. 2010);

- "methods and systems for 'managing a game of Bingo'" – <u>Planet Bingo, LLC v. VKGS LLC</u>, 2014 U.S. App. LEXIS 16412, *5 (Fed. Cir. Aug. 26, 2014);

- "creating a contractual relationship—a 'transaction performance guaranty'" – <u>buySAFE, Inc. v. Google, Inc.</u>, 2014 U.S. App. LEXIS 16987, *10 (Fed. Cir. Sept. 3, 2014);

- "a method for verifying the validity of a credit card transaction over the Internet" – <u>CyberSource Corp. v. Retail Decisions, Inc.</u>, 654 F.3d 1366, 1370 (Fed. Cir. 2011);

- the abstract idea of asking someone to perform a task and either waiting for them to complete it or asking someone else – <u>Eclipse IP LLC v. McKinley Equip. Corp.</u>, 2014 U.S. Dist. LEXIS 125395, *21 (C.D. Cal. Sept. 4, 2014);

- "concept of currency exchange, as applied to the exchange of currencies in the form of loyalty award credits of different vendors" – <u>Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.</u>, 2014 U.S. Dist. LEXIS 122244, *21 (E.D. Tex. Sept. 2, 2014);

- "concept of determining if a decision is required" – <u>Comcast IP Holdings I, LLC v. Sprint Communs. Co. L.P.</u>, 2014 U.S. Dist. LEXIS 96289, *10 (D. Del. July 16, 2014);

- "maintaining a database and updating users about new information" – <u>Data Distrib. Techs., LLC v. Brer Affiliates, Inc.</u>, 2014 U.S. Dist. LEXIS 115543, *30 (D.N.J. Aug. 19, 2014);

- "a controlled exchange of information about people that has long been practiced by human matchmakers or headhunters" – <u>Walker Digital, LLC v. Google, Inc.</u>, 2014 U.S. Dist. LEXIS 122448, *13 (D. Del. Sept. 3, 2014); and

- "the basic idea of offering something to a customer based on his or her interest in something else" – <u>Tuxis Techs., LLC v. Amazon.com, Inc.</u>, 2014 U.S. Dist. LEXIS 122457, *8 (D. Del.Sept. 3, 2014).

## 2.    Proper Statement of the Alleged "Abstract Idea"

A properly framed statement of the alleged "abstract idea" would incorporate few of the specific limitations from the claimed invention, consistent with the form of abstract ideas identified in the above-cited cases.  Following this principle, a properly worded "abstract idea" would read "**a method for providing event photographs**."  The premise of the abstract idea exclusion is that "ideas themselves are not patentable." <u>Alice</u>, 134 S. Ct. at 2355.  Stating the abstract idea any more

12

narrowly or with any more specificity would violate this premise.

Contrary to the above principles and precedents, Defendants' alleged "abstract idea" presents a moving target that changes depending upon the particular claim or claim limitation being discussed. Defendants have not presented a single abstract idea that is applied or relied upon across all claims of the '875, '214, and '035 patents, whether individually or as a group. In addition, the alleged abstract ideas asserted by Defendants are over stated so as to improperly broaden the ordinarily narrowly construed exceptions under 35 U.S.C. § 101.

In this case, Defendants' arguments allege numerous "abstract ideas," in very narrow or specific terms that closely parallel the limitations of the asserted claims. These are some examples of how Defendants describes the alleged "abstract idea":

- "using a bib number (or other identifying information) of an individual race runner or other sporting event participant to select which photos to sell to that participant" (Motion at 1);

- "using a generic computer to place an advertisement on the photo" (Id.);

- "selecting and distributing sporting event photos and put it on a general purpose computer" (Id.);

- "searching for photographs of a race or sporting event using identifying data, such as a bib number – and describes it in the modern world using a computer network, such as the internet" (Motion at 3);

- "how to accelerate [the process of providing event photographs] using a computer network, such as a website on the internet" (Motion at 3);

- "using an 'electronic device' to create an area in the photograph to display an advertisement" (Motion at 6);

- "selecting and distributing photos of a race using a bib number or other identifying information" (Motion at 9); and

- "selecting and distributing photographs of a race using a bib number or other identifying data" and "inserting an advertisement using an electronic device" (Motion at 12).

Defendants' proposed abstract ideas incorporate many of the limitations recited in the claims. Such a position obviously favors a finding that the claims are

CISLO & THOMAS LLP
Attorneys at Law
SUITE 500
1333 2ND STREET
SANTA MONICA, CALIFORNIA 90401-4110
TELEPHONE: (310) 451-0647 · FACSIMILE: (310) 394-4477
WWW.CISLO.COM

13

1   directed to an abstract idea and eliminate many of the specific limitations from a

2   consideration of whether there is "significantly more" than the abstract idea in the

3   claims.   The "abstract ideas" alleged by Defendants run contrary to the long-

4   established principle that patentability exclusions are to be narrowly construed.

5   <u>Alice</u>, 134 S. Ct. at 2354.

### 3.   When the Abstract Idea is Properly Stated, and Each Claim Element Is Analyzed Both Individually and As an Ordered Combination, the Patents Do Not Claim an Abstract Idea

With the proper statement of the abstract idea in mind, "a method for

9   providing event photographs," the analysis then shifts to the consideration of the

10   elements of each claim both (a) individually and (b) as an ordered combination, to

11   determine whether the additional elements transform the nature of the claim into a

12   patent-eligible application.   <u>Alice</u>, 134 S. Ct. at 2355.   In other words, does the claim

13   only assert the abstract idea itself, or does it cover a patent-eligible *application* of

14   that abstract idea?

15   An important concept to keep in mind is that an "abstract idea is one that has

16   no reference to material objects or specific examples--*i.e.*, it is not concrete."

17   <u>Ultramercial</u>, 722 F.3d at 1343.   In virtually all of the Supreme Court "abstractness"

18   cases, the claim terms were extremely vague, or they claimed the abstract idea itself,

19   which lent to their being found abstract.[7]   In contrast, the claims in the patents-in-

---

[7]   For example, the claim analyzed in <u>Bilski v. Kappos,</u> 130 S. Ct. 3218, 3223-24 (2010) was:

(a) initiating a series of transactions between said commodity provider and consumers of said commodity wherein said consumers purchase said commodity at a fixed rate based upon historical averages, said fixed rate corresponding to a risk position of said consumers;

(b) identifying market participants for said commodity having a counter-risk position to said consumers; and

(c) initiating a series of transactions between said commodity provider and said market participants at a second fixed rate such that said series of market participant transactions balances the risk position of said series of consumer transactions.

None of the fixed rate or risk position parameters are concrete, nor is "balancing" of such parameters. In <u>Prometheus</u>, the analyzed claim involved a law of nature, and only instructed the doctor to increase or decrease the dosage based on the level of the drug found in the patient's blood. <u>Prometheus</u>, 132 S. Ct. at 1295-97.   The Court found that the claims did not add

CISLO & THOMAS LLP
*Attorneys at Law*
SUITE 500
1333 2ND STREET
SANTA MONICA, CALIFORNIA 90401-4110
TELEPHONE: (310) 451-0647   FACSIMILE: (310) 394-4477
WWW.CISLO.COM

suit have a number of concrete elements that are not in the prior art cited by Defendants.  The following chart analyze these elements for a sample claim.

| Claim 1 of the '214 Patent | Analysis of Claim Elements[8] |
|---|---|
| A process providing event photographs of a sporting event for inspection, selection and distribution via a computer network, comprising the steps of: | |
| taking photographs of at least one participant of a sporting event along at least one point of a course or field thereof; | This is a longstanding practice, but a concrete one. |
| associating identifying data with each photograph taken, | This wherein clause below adds definiteness to this claim element |
| wherein the identifying data is selected from at least one of:     a number corresponding to a     number worn by a participant, | Here the claim identifies a concrete and non-variable list of identifying data.  A bib number is a concrete identifier. In the prior art, photographers, rather than participants, used these to search for photographs |
| a participant's name, | Another concrete identifier, Defendant does not identify this as being used in the prior art to identify photographs |
| a code acquired from a component worn by a participant, | Another concrete identifier, Defendant does not identify this as being used in the prior art to identify photographs |
| a date and time, including hour and minute the photograph was taken | Another concrete identifier, Defendant does not identify this as being used in the prior art to identify photographs |
| informing the sporting participants of the identifying data; | This term is subject to a dispute between the parties as to the meaning of "informing," but in any event, defendant does not point to any prior art having this |

"something more" to the natural law.  Id. at 1298.  Genetic Techs. Ltd. v. Agilent Techs., Inc., 2014 U.S. Dist. LEXIS 31474 (N.D. Cal. Mar. 7, 2014) is a good example of a defendants' failure to show, by clear and convincing evidence, that law of nature claims are not meaningfully limited (denying motion).

[8] This analysis does not constitute claim construction, but rather only identifies whether the claims may arguably represent concrete (non-abstract) limitations.  Plaintiff maintains that full claim construction should be done before this analysis is performed.

15

| | step, since sporting participants at the time never searched for their photos and thus had no reason to know of the identifying data[9] |
|---|---|
| transferring the photographs to a computer network server; | This is a longstanding practice, but concrete |
| cataloging each of the photographs in a web-site server according to the identifying data so that the server can be accessed and a photograph of a particular sporting event participant can be searched for utilizing the identifying data; and | This term is concrete and specifies what is cataloged with the photo, the concrete identifying data, so that the photo can later be searched on the server. Defendants point to no prior art where this was a longstanding practice. |
| displaying the photograph of the sporting event participant for inspection and ordering. | This term is concrete, it states what is displayed, the photo, and the precise purposes for which it is displayed. Defendants point to no prior art where this was a longstanding practice. |

Taken individually, the claim has *at least* three concrete elements (informing, cataloging, and displaying) for which Defendants have no prior art.  Taken as an ordered combination, they are more concrete and Defendants have even less prior art.  Thus, the claim is not abstract under Part 1 of the patent eligibility test.

Moreover, dependent claim 3 further narrows the claim by restricting the identifying data to a "code from a component," which is not in the prior art, and also requires triggering a camera when the component passes a predetermined point, yet another concrete step (camera trigger) that is not described in Defendants' prior art. Claim 4 further restricts the types of components that can be used, while Claim 5 adds a concrete search term of the approximate time.  Claim 6 adds an algorithm to Claim 5, to calculate how to approximate the time to be used as a search tool for the method, much in the same way an algorithm was used in Diamond v. Diehr, 450 U.S. 175, 185, 101 S. Ct. 1048, 67 L.Ed.2d 155 (1981), where the Court found that the algorithm, as applied to an industrial process, was patent eligible.

---

[9] *See* Wolf Decl. ¶¶ 3-7, Exh. 1.

CISLO & THOMAS LLP
*Attorneys at Law*
SUITE 500
1333 2ⁿᵈ STREET
SANTA MONICA, CALIFORNIA 90401-4110
TELEPHONE: (310) 451-0647   FACSIMILE: (310) 394-4477
WWW.CISLO.COM

These independent and dependent claim elements, when considered individually and as an ordered combination, add concrete steps that are not in the prior art to the abstract idea of "a method for providing event photographs." Such limitations make the claims a patent-eligible *application* of the ineligible idea.

Defendants failed to provide an analysis of each claim element because when it is done, the limitations are sufficient to yield valid claims. Plaintiff maintains that claim construction should be done before the final analysis of the claims, but this preliminary analysis is enough to show that Defendants have failed to meet their very high burden to show patent ineligibility by clear and convincing evidence.

Defendants assert that the '035 Patent is also abstract, because it contains the same limitations as the '875 and '214 Patents, plus an additional advertising limitation. But as shown above, those limitations are not abstract, and thus the '035 Patent claims are not abstract. We use Claim 14 as only one example.

| Claim 14 of the '035 Patent | Analysis of the Claim Elements |
|---|---|
| A method for providing on-line event photographs, comprising the steps of: | |
| capturing multiple photographs of sporting event participants during a sporting event; | This is a longstanding practice, but a concrete one. |
| associating identifying data with each photograph taken, including associating at least one of: | This element has a concrete list of identifying data. |
|     a time the photograph was captured, | Time is a concrete identifier, Defendant does not identify this as being used in the prior art to identify photographs |
|     a name of the individual photographed, | Another concrete identifier, Defendant does not identify this as being used in the prior art to identify photographs |
|     a number worn by the individual photographed, or | A bib number is a concrete identifier. In the prior art, photographers, rather than participants, used these to search for photographs |
|     a code from a device worn by the individual photographed; | Another concrete identifier, Defendant does not identify this as being used in the prior art to identify photographs |
| accessing a database and searching for a | This is a concrete step, searching by the |

| | |
|---|---|
| photograph utilizing the identifying data; | above-listed identifying data.  Defendants cite no prior art |
| selecting and ordering a digital photograph; | This is yet another concrete step, stating exactly what is being selected and ordered |
| utilizing an electronic device to create a field in a corner or margin of the selected digital photograph and associate visual advertiser indicia, including an advertiser name or logo, within the field; | Although this step does not specify the "electronic device" to insert the visual advertiser indicia, it does concretely state that the advertising is to be placed in the corner or margin of the selected photograph.  Defendant cites no prior art where this had been done. |
| and electronically transferring the selected digital photograph containing the visual field with advertiser indicia to a user's electronic device by downloading the photograph to the user's electronic device or sending the user an electronic message including the digital photograph containing the field or a link to download the digital photograph containing the field. | This step is also concrete, taking the resulting digital photograph, and electronically transferring it by one of three specified methods. |

Once again, enough of the claim steps have concrete limitations to create a patent-eligible *application* of "a method for providing event photographs."  The claim does not encompass the abstract idea itself, nor does it create a monopoly over all the possible methods of creating a narrow type of event photograph and delivering to recipients.  Nor does the claim, as Defendants suggest, preempt all forms of advertising.  *See, e.g.,* Ultramercial, 722 F.3d at 1352 (the claims did "not say 'sell advertising using a computer,' and so there is no risk of preempting all forms of advertising, let alone advertising on the Internet").

The '035 Patent claims are somewhat similar to those analyzed in Ultramercial, as both involved an Internet-implemented form of advertising, with concrete steps, which the Federal Circuit found to be patent-eligible.  *See* Ultramercial, 722 F.3d at 1350-1354.  Although Ultramercial has been remanded to the Federal Circuit in view of the recent Alice decision, Ultramercial is grounded in

CISLO & THOMAS LLP
Attorneys at Law
SUITE 500
1333 2ND STREET
SANTA MONICA, CALIFORNIA 90401-4110
TELEPHONE: (310) 451-0647   FACSIMILE: (310) 394-4477
WWW.CISLO.COM

prior Supreme Court decisions such as <u>Prometheus</u> and <u>Bilski</u>, which <u>Alice</u> used as the basis for its analysis.  Since its remand, seven courts have cited to <u>Ultramercial</u>.  Thus, <u>Ultramercial's</u> reasoning is sound, even if it is not precedential.

Defendants confuse the analysis for the '035 patent by asserting that all concepts or ideas are somehow abstract, so long as they can be implemented on a wide variety of entirely conventional devices.  (Motion at 17).  This is not, and never has been the standard.  Defendants also cite the '035 specification, which states that photographers need additional revenue streams, and then make a logical leap by arguing that this need renders commonplace the patentee's idea to place advertising atop photographs and distribute them through a method that requires identifying data for each photograph.  Defendants have no supporting evidence for their premise.  Defendants' bald assertions cannot support a judgment on the pleadings.  Although it is true that advertising in general is well known, the patent claims are sufficiently narrow—limited to advertising on top of a sporting event photograph, as well as requiring finding the photograph through specific identifying data—that the claims do not create a wholesale preemption of advertising.

### 4. Even if the Claims Fail Part One of the Alice Test, They Have a Sufficient "Inventive Concept" to Withstand Part Two

Plaintiff maintains that the Patents in Suit pass part one of the <u>Alice</u> test because they are a patent-eligible *application* of the abstract idea of "a method for providing event photographs."  If so, the analysis ends and the Motion must be denied.  But even if the Court finds otherwise, the Patents in Suit have a sufficient "inventive concept"–*i.e.*, "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself" such that the Motion must still be denied.  <u>Alice</u>, 134 S. Ct at 2355 (internal quotes omitted).

A claim that recites an abstract idea must include "additional features" to ensure that the claim is "something more" than a drafting effort designed to

CISLO & THOMAS LLP
Attorneys at Law
SUITE 500
1333 2ⁿᵈ STREET
SANTA MONICA, CALIFORNIA 90401-4110
TELEPHONE: (310) 451-0647   FACSIMILE: (310) 394-4477
WWW.CISLO.COM

monopolize the abstract idea. <u>Alice</u>, 134 S. Ct at 2357. The addition of a computer alone does not change the analysis. <u>Id</u>. Nor does simply appending conventional steps, specified at a high level of generality, provide "enough" to supply an inventive concept. <u>Id</u>. "If, to implement the abstract concept, one *must* perform the additional step, or the step is a routine and conventional aspect of the abstract idea, then the step merely separately restates an element of the abstract idea, and thus does not further limit the abstract concept to a practical application." <u>Ultramercial</u>, 722 F.3d at 1348, citing <u>Prometheus</u>, 132 S. Ct. at 1298.

### i. The Patents in Suit Claims are Sufficiently Limited to Contain an Inventive Concept

The claims of the patents-in-suit are sufficiently limited to overcome these obstacles to patent eligibility. As discussed below, there are other methods to provide event photographs, thus the claims are not directed to the abstract method itself. The claims include sufficient "additional features," as discussed in the claim analysis above, to prevent a monopolization of the abstract idea. Nor are those steps routine and conventional aspects of the abstract idea itself, such that they are *required* to implement the abstract idea of providing event photographs over a computer network. Also as analyzed above, the claims contain sufficient limitations, which are adequately specific, to avoid the pitfall of appending conventional steps specified at a high level of generality. <u>Alice</u>, 134 S. Ct at 2357.

### ii. The asserted claims are significantly more than the "abstract idea"

The analysis in this case should be similar that of <u>Autoform</u>, in which the court considered patent claims directed to "[a] method for designing a tool for deep drawing of sheet metal." U.S. Patent No. 7,623,939, claim 1; *see* <u>Autoform</u>, 2014 U.S. Dist. LEXIS 123684, *7. The patents at issue in <u>Autoform</u> (7,894,929 and 7,623,939) include claims with detailed limitations and preambles that have between 92 and 106 words. Despite the length and detail of these claims, the court distilled the abstract idea of those claims down to "basic concepts in the design of sheet

20

metal forming tools" – in line with other court precedents.  Id.

The court in Autoform found that "[w]hile the patent may include or rely on some basic concepts in the design of sheet metal forming tools, the patents also include numerous limitations that narrow the scope of the patent."[10]  Id.  Based upon these findings, the court determined that the moving party failed to present clear and convincing evidence of the invalidity of the patent under 35 U.S.C. § 101.

Similarly, the claims in the '875, '214, and '035 patents rely on some basic concepts of a method for providing event photographs, but the claims also include numerous limitations that narrow the scope of the patents:

1) associating identifying data with each photograph ('875 patent claims 1, 16, 24, 29) ('214 patent claims 1, 11, 17) ('035 patent claims 1, 14, 21);

2) the identifying data comprising a code acquired from a component worn by the sporting event participant ('875 patent claims 3, 29) ('214 claim 3);

3) informing the sporting participants of the identifying data ('875 patent claims 1, 16, 24, 29) ('214 patent claims 1, 11, 17);

4) cataloging each of the photographs according to the identifying data ('875 patent claims 1, 16, 24. 29) ('214 patent claims 1, 11, 17);

5) accessing the server at a location other than the sporting event ('875 patent claims, 1, 16, 24, 29) ('035 patent claims 1, 14, 21) ('035 patent claims 3,15, 22);

6) searching for a photograph of a particular sporting event participant utilizing the identifying data ('875 patent claims 1, 16, 24. 29) ('035 patent claims 1, 14, 21);

7) triggering a camera to take a photograph when the component passes a predetermined point ('875 patent claims 3, 30) ('214 patent claim 3);

---

[10] The court pointed to many concrete limitations, including: (1) smoothing an irregular component edge; (2) filling in a fill surface; (3) forming a smooth component edge; (4) where the fill surface runs into the predefined component geometry by a continuous tangent; (5) arranging sectional profiles along the smooth component edge; (6) avoiding an overlap or intersection condition between sectional profiles; (7) parameterizing the sectional profiles by the means of profile parameters; (8) the profile parameters being scalar values; (9) laterally interconnecting the sectional profiles by a continuous surface to form the geometry of the addendum zone of the tool; and (10) where the addendum zone complements the component geometry in the edge zone and runs into the component and the binder with a continuous tangent.  Id at *7-8.

CISLO & THOMAS LLP
Attorneys at Law
SUITE 500
1333 2ND STREET
SANTA MONICA, CALIFORNIA 90401-4110
TELEPHONE: (310) 451-0647   FACSIMILE: (310) 394-4477
WWW.CISLO.COM

8) the predetermined point including a sensor which interfaces with the component ('875 patent claims 4, 31);

9) the component comprising a passive component, a bar code, an inductive circuit, an active component, or an electronic device having a transmitter ('875 patent claims 5-9, 32-36) ('214 patent claim 4);

10)   providing a digital camera electronically connected to the server for immediate download of photographs from the event to the server ('875 patent claims 12, 20, 25, 37) ('214 patent claims 7, 11, 19);

11)   utilizing an electronic device to create a field in the selected digital photograph and associate a visual advertiser indicia within the field ('035 patent claims 1, 14, 21);

12)   associating an electronic link to an electronic document or website of the advertiser in the field ('035 patent claims 7, 18, 23); and

13)   activating the link in the visual field and connecting the user to the advertiser's electronic document or website ('035 patent claims 7, 18, 23).

This list is not exhaustive of numerous claim limitations that narrow the scope of the patents beyond any reasonable "abstract idea" to which the asserted claims of the '875, '214, and '035 patents may be directed.  Just as the many limitations in Autoform narrowed the patent scope, the limitations of the '875, '214, and '035 patents narrow the scope so that the abstract idea is not pre-empted by the asserted patents.  This is the case whether the Court adopts the specific "abstract idea" argued for by Defendants or the general "abstract idea" offered by Plaintiff.

In a recent case decided by Judge Wu, McRO, Inc. v. Namco Bandai Games Am., 2014 U.S. Dist. LEXIS 135212 (C.D. Cal. Sept. 22, 2014) the opinion focused on the fact that the patent claims recited prior art steps, but when it came to the novel steps, they were stated in overly-generalized or functional language that failed to restrict the scope of the patent (e.g., "obtaining a first set of rules that define output morph weight set stream as a function of phoneme sequence and time of said phoneme sequence").  Id. at *26-27, 30.  All of the independent claims required a "rule," which was chosen by the user, and the specification said the rule could be

CISLO & THOMAS LLP
Attorneys at Law
SUITE 500
1333 2ⁿᵈ STREET
SANTA MONICA, CALIFORNIA 90401-4110
TELEPHONE: (310) 451-0647   FACSIMILE: (310) 394-4477
WWW.CISLO.COM

anything.  The court stated that this general language failed to limit what rules could be applied, and thus encompassed all of them.  Id. at *37 ("Because the claim purports to cover all such rules, in light of the prior art, the claim merely states an abstract idea while adding the words 'apply it'").[11]  In the present case, however, the claims of the patents-in-suit are devoid of such generalized functional language, instead reciting concrete steps and specific identifying data.

### D.   The Patent Claims Are Not Abstract Because They Do Not Disproportionately Tie Up the Use of the Underlying Ideas

The exclusions to patent eligibility are driven by pre-emption, specifically whether the patent claims will monopolize the basic tools of scientific and technological work.  Alice, 134 S. Ct. at 2354.  But the Supreme Court cautions that courts should "tread carefully in construing this exclusionary principle lest it swallow all of patent law," because at some level, "all inventions … embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas."  Id. quoting Prometheus, 132 S. Ct. at 1293.

A claim can embrace an abstract idea and still be patentable.  See Prometheus, 132 S. Ct. at 1294.  "Instead, a claim is not patent eligible only if, instead of claiming an *application* of an abstract idea, the claim is instead *to* the abstract idea itself."  Ultramercial, 722 F.3d at 1343 (emphasis original) citing Bilski.  "It is not the breadth or narrowness of the abstract idea that is relevant, but whether the claim covers every practical application of that abstract idea."  Id. at 1346.

Defendants cite this preemption principle (Motion at 8), but utterly fail to state how all 84 patent claims in the three patents would "monopolize use of the idea in that field."  In fact, Plaintiff's patent claims do not monopolize the field of event photograph distribution.  For example, if Capstone were to select participant photos by bib number, and then distribute those photos by email to the participants to view and offer for purchase, that would not infringe any of the claims of the '875 or '214

---

[11]  Speaking of using "apply it," the final element of the McRO claim actually begins with: "**applying** said final stream of output morph weight sets …."  Id. at *36 (emphasis added).

CISLO & THOMAS LLP
*Attorneys at Law*
SUITE 500
1333 2ⁿᵈ STREET
SANTA MONICA, CALIFORNIA 90401-4110
TELEPHONE: (310) 451-0647   FACSIMILE: (310) 394-4477
WWW.CISLO.COM

Patents. Capstone may develop a method that does not "inform" the participants of the identifying data; after all, Capstone contends it does not do so now. (Veregge Decl. ¶ 3, Exh. 3). Or Capstone could use facial recognition, jersey or helmet colors as identifying data. Capstone could list photos on a website without any search criteria. Thus, numerous methods circumvent the '875 and '214 Patents.

The '035 patent claims can be circumvented by not associating identifying data with the photographs or listing the branded photos without any search criteria. The '035 also has a limitation that restricts it to sporting events, so any other type of event photograph would not infringe. The branding or advertising could be added to the printed photograph without adding it to the digital photograph. Capstone is not restricted to the concrete limitations of the '035 Patent claims, there are numerous ways to distribute photographs with advertising that do not infringe the patent.

## E.   The Computer Adds a Meaningful Limitation, But Even if it Does Not, the Claim Elements are Sufficiently Limited

Defendants cite cases where courts have analyzed whether a computer in a computer-implemented patent claim adds a sufficient limitation by examining whether the methods could be done on paper or in the mind. Here, the methods could not be done on paper or in the mind. The act of taking a photo and displaying it requires a camera and a computer or printer, no one can sketch one by hand or in their mind. Defendants assert that a photographer could, *inter alia*, "inform participants of their bib numbers, catalog each of the photographs by bib number, and send them to the participants for selection and ordering." (Motion at 15). But there would be no reason to inform the participant of the bib number, because in their scenario, Defendants describe no search to be performed by the participant, since the photographer sends the photograph to the participant without any search. The search, of course, is integral to the '875 and '214 patents. For the '035 patent, one could possibly put an advertisement onto a photograph by hand, but few would ever want a hand-drawn advertisement on their photo. The prior art is sufficiently

CISLO & THOMAS LLP
Attorneys at Law
SUITE 500
1333 2ND STREET
SANTA MONICA, CALIFORNIA 90401-4110
TELEPHONE: (310) 451-0647   FACSIMILE: (310) 394-4477
WWW.CISLO.COM

1  different that the claimed methods could not be done on paper or in the mind. The

2  computer in this instance does add an actual limitation to the claims.

3       But even if the computer did not add a meaningful limitation to the claim, the

4  presence of a computer does not turn a patent eligible claim into an ineligible claim.

5  As discussed above, the claim limitations, with or without a computer, are

6  sufficiently limiting to yield patent eligible claims. Thus, the claims are patent

7  eligible, even if the computer does not add a meaningful limitation.

8  ### III. CONCLUSION

9       The Motion is premature because claim construction is not completed and the

10  courts have yet to develop coherent guidelines to analyze these issues. Even if not

11  premature, Defendants have failed to meet their burden to prove invalidity by clear

12  and convincing evidence, because they failed to analyze all the claims elements as

13  required by Alice, and facts necessary to decide the Motion in their favor are not

14  available in a motion for judgment on the pleadings. Even if the Court believes it

15  has enough information to decide the Motion, the patent claims at issue are patent

16  eligible because they contain concrete limitations that meaningfully limit the scope

17  of the claims to a permissible *application* of the abstract idea, and not the abstract

18  idea itself. For all these reasons, the Motion should be denied.

19

20       Respectfully submitted:

21       CISLO & THOMAS LLP

22

23  Dated: September 29, 2014     By: /s/Peter S. Veregge

24       Daniel M. Cislo

25       Peter S. Veregge

25       Attorneys for Plaintiff,

26       PETER WOLF

27

28

CISLO & THOMAS LLP
Attorneys at Law
SUITE 500
1333 2ND STREET
SANTA MONICA, CALIFORNIA 90401-4110
TELEPHONE: (310) 451-0647   FACSIMILE: (310) 394-4477
WWW.CISLO.COM

## CERTIFICATE OF SERVICE

I am over the age of eighteen (18) years, employed in the County of Los Angeles, and not a party to the above-entitled action.  My business address is 1333 2nd Street, Suite 500, Santa Monica, California 90401-4110.

On September 29, 2014, I served:

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

to be sent by ECF electronic mail to the following:

John E.  Lord, Esq.
ONE LLP
9301 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA 90210
Phone: (310) 866-5157
jlord@onellp.com, crodriguez@onellp.com

I declare, under penalty of perjury under the laws of the United States of America that the foregoing is true and that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on September 29, 2014, at Westlake Village, California.

/s/ Laura Banuelos
Laura Banuelos

1