John E. Lord (Bar No. 216111)
jlord@onellp.com
**ONE LLP**
9301 Wilshire Blvd., Penthouse Suite
Beverly Hills, CA  90210
Phone:  (310) 866-5157

*Attorneys for Defendants,*
CAPSTONE PHOTOGRAPHY, INC.
AND MICHAEL SKELPS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER H. WOLF, an individual<br><br>     Plaintiff,<br><br>     v.<br><br>CAPSTONE PHOTOGRAPHY, INC., a Connecticut corporation, MICHAEL SKELPS, an individual, and DOES 1-10, inclusive<br><br>     Defendants. | Case No. CV 13-09573-CAS-PJW<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>DATE:   October 20, 2014<br>TIME:    10:00 AM<br>CTRM:   5<br>JUDGE:  Hon. Christina A. Snyder |

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................... 1

II.  CAPSTONE'S MOTION IS RIPE ................................................................. 2

  A. *Alice* Does Not Require Claim Construction To Decide Subject Matter Eligibility Under § 101 ............................................................... 2

  B. Further "Appellate Guidance" Is Not Required As *Alice* Establishes A Clear Two-Part Test.. ................................................................................. 5

  C. *Alice* Does Not Require Analyzing The Prior Art Before Deciding This Motion. ................................................................................................. 6

  D. No Factual Disputes Need To Be Resolved. ..................................... 7

III. *ALICE'S* TWO-STEP FRAMEWORK RENDERS THE CLAIMS OF THE ASSERTED PATENTS INELIGBILE FOR PATENT PROTECTION ................... 9

  A. The "Clear And Convincing" Standard Does Not Apply In This Case. .......... 9

  B. The Asserted Patents Are Directed To An Abstract Idea. ............................... 9

  C. The Asserted Patents' Use Of A Generic Computer Network To Implement The Abstract Idea Is Not An "Inventive Concept." ..................... 12

IV.  CONCLUSION ............................................................................................ 16

# TABLE OF AUTHORITIES

**CASES**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*
728 F.3d 1336 (Fed. Cir. 2013) ................................................................................ 7

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*
134 S. Ct. 2347 (2014) .................................................................................... passim

*Autoform Eng'g v. Eng'g Tech. Assoc.*
2014 WL 4385855 (E.D. Mich. Sept. 5, 2014) ...................................................... 14

*Bilski v. Kappos*
130 S. Ct. 3218 (2010) ...................................................................... 2, 9, 10, 15

*BuySAFE, Inc. v. Google, Inc.*
No. 2012-1575 (Fed. Cir. Sept. 3, 2014) ................................................................ 14

*CLS Bank Int'l v. Alice Corp. Pty.*
717 F.3d 1269 (Fed. Cir. 2013) ....................................................................... 10, 11

*CMG Financial Services, Inc. v. Pacific Trust Bank*
No. CV 11-10344-PSG (C.D. Cal. Aug. 29, 2014) .................................................. 3

*Cnty. of L.A. v. Davis*
440 U.S. 625 (1979) .................................................................................................. 3

*CyberFone Sys. LLC v. CNN Interactive Grp., Inc.*
558 F. App'x 988 (Fed. Cir. 2014) ........................................................................... 4

*Data Distrib. Tech. v. Brer Affiliates, Inc.*
2014 WL 4162765 (D. N.J. Aug. 19, 2014) ............................................................. 4

*Diamond v. Diehr*
450 U.S. 175 (1981) ............................................................................................ 7, 13

*Eclipse IP LLC v. McKinley Equipment Corporation*
2014 WL 4407592 (C.D. Cal. Sept. 4, 2014) .............................................. 3, 4, 5, 8

*Genetic Technologies Ltd. v. Laboratory Corp. of America*
2014 WL 4379587 (D. Del. Sept. 3, 2014) .................................................................. 9

*I/P Engine, Inc. v. AOL Inc.*
2013-1307, 2014 WL 3973501 (Fed. Cir. 2014) ...................................................... 3

*Loyalty Conversion Systems Corp. v. American Airlines, Inc.*
No. CV 13-655 (E.D. Tex.  Sept. 3, 2014) ................................................................ 7

*Mayo Collaborative Serv. v. Prometheus Laboratories*
132 S. Ct. 1289 (2012) ................................................................................................ 9

*McRO, Inc. v. Naughty Dog, Inc.*
2014 WL 4758417 (C.D. Cal. Sept. 22, 2014) ....................................................... 14

*Microsoft Corp. v. i4i Ltd. P'ship*
131 S. Ct. 2238 (2011) ................................................................................................ 9

*Planet Bingo, LLC v. VKGS, LLC*
2014 WL 4195188 (Fed. Cir. Aug. 26, 2014) ................................................. 10, 14

*Ultramercial, Inc. v. Hulu, LLC*
722 F.3d 1335 (Fed. Cir. 2013) ................................................................................. 3

*Walker Digital, LLC, v. Google, Inc.*
No. 11-318 (D. Del. Sept. 3, 2014) ............................................................................ 8

*Wildtangent, Inc. v. Ultramercial, LLC*
134 S. Ct. 2870 (2014) ........................................................................................... 2, 3

## I. INTRODUCTION

In its Opening Brief, Capstone showed that Wolf's patents are invalid under the Supreme Court's recent, groundbreaking decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l,* 134 S. Ct. 2347 (2014). *Alice* establishes that patent claims containing an abstract idea implemented by a general purpose computer or computer network are invalid under 35 U.S.C. § 101. As shown in Capstone's Opening Brief, Wolf's patents merely recite the use of a generic computer network such as the Internet to carry out the abstract idea of selecting and ordering photos of a race using a bib number or other identifying data. Under *Alice*, this cannot be patented.

Wolf's Opposition does nothing to substantively controvert these case dispositive points. Wolf does not dispute that a general computer network is all that is required to implement the idea claimed in the patent. Instead, Wolf tries to obfuscate the issues and delay disposition of this case by raising a series of red herrings. For example:

- Wolf argues that Capstone's Motion should be delayed pending claim construction. But the Supreme Court has called the matter of patent eligibility a "threshold issue" and a number of courts, including the Federal Circuit and this district, have held that a §101 dispute can be resolved under Rule 12 without requiring claim construction. Notably, Wolf points to no construction that would save his claims from invalidation under *Alice*.

- Wolf argues that this Court should wait for further "appellate guidance" before ruling. *Alice* provided all the guidance needed: a straight forward two-part test. Since the *Alice* ruling this past June, fourteen decisions, including from the Federal Circuit and this district, have held patents to be invalid under § 101 under the new *Alice* test.

- Wolf resorts to the argument that fact disputes exist. Yet, the issue of invalidity under § 101 presents a question of law. Further, Wolf's Opposition does not point to any factual issues that affect the outcome of the Court's analysis under § 101.

- Wolf criticizes Capstone for not citing adequate prior art. But there is no reason

1

**REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS**

why it should.  Capstone's Motion does not seek invalidity based upon anticipation or obviousness – which would require the identification of prior art.  Capstone rather seeks invalidity under § 101, for claiming ineligible subject matter, which does not require Capstone to proffer prior art.

- Wolf argues that his patents have collectively 84 claims.  The number of claims makes no difference, however, because there is no relevant difference between them.  Wolf fails to identify how any one claim or groups of claims is materially different from the others for purposes of § 101.  They all fail for essentially the same reasons.  Similarly, in *Alice,* the Supreme Court affirmed the judgment of the district court invalidating all 208 asserted claims across four different patents without conducting a claim by claim analysis.

Wolf's Opposition also heavily relies on the holding in *Ultramercial, Inc. v. Hulu, LLC,* 722 F.3d 1335 (Fed. Cir. 2013).  The *Ultramercial* decision is no longer good law in view of *Alice.  Ultramercial* has been vacated in its entirety.  *Wildtangent, Inc. v. Ultramercial, LLC*, 134 S. Ct. 2870 (2014).

Looking past these distractions to the substance of the *Alice* standard, the invalidity of Wolf's patent claims is inescapable.  The Court should grant Capstone's motion for judgment on the pleadings.

## II.   CAPSTONE'S MOTION IS RIPE

### A.   *Alice* Does Not Require Claim Construction To Decide Subject Matter Eligibility Under § 101.

Wolf argues that Capstone's Motion is premature because the Court has not construed the claims.  Wolf Opp., p. 4.  In its Opening Brief, Capstone noted that the Supreme Court has held that invalidity under § 101 is a "threshold test." *Bilski v. Kappos*, 130 S. Ct. 3218, 3225 (2010).  Further, Capstone cited to a number of cases, both from the Federal Circuit and this district, where courts repeatedly resolved a § 101 motion without the need for claim construction.  Capstone Br., pp. 6-8.  Wolf's Opposition, to the contrary, relies on cases all from district courts out of this district.  Wolf Opp., p. 5.  More importantly, the authority Wolf relies on to argue for the necessity of claim construction all

2

pre-date (save one) the *Alice* decision. Wolf Opp., pp. 4-6. Wolf relies on decisions that cite the Federal Circuit's opinion in *Ultramercial,* 722 F.3d 1335. In *Ultramercial,* the Court did state that claim construction may be required to resolve a § 101 dispute. *Id.* at 1339. On June 30, 2014, however, the Supreme Court vacated the *Ultramercial* judgment and remanded the case to the Federal Circuit for further consideration in light of *Alice. See Wildtangent, Inc. v. Ultramercial, LLC*, 134 S. Ct. 2870 (2014). Thus, *Ultramercial* is no longer good law.[1]

In a nonprecedential case decided after *Alice*, Judge Mayer of the Federal Circuit issued a concurring opinion praising the virtues of early § 101 practice:

> From a practical perspective, there are clear advantages to addressing section 101's requirements at the outset of litigation. Patent eligibility issues can often be resolved without lengthy claim construction, and an early determination that the subject matter of asserted claims is patent ineligible can spare both litigants and courts years of needless litigation.

*I/P Engine, Inc. v. AOL Inc.*, 2013-1307, 2014 WL 3973501, at *12 (Fed. Cir. Aug. 15, 2014).

Additionally, this district has recently held, post-*Alice*, that claim construction is not necessary to resolve a § 101 issue. *See, e.g., Eclipse IP LLC v. McKinley Equipment Corporation*, 2014 WL 4407592, at * 6 (C.D. Cal. Sept. 4, 2014) ("Here, based on the substance of the parties arguments and the content of the patents, this Court would find that neither separate claim construction proceedings nor further development of the factual record are required before addressing the § 101 issue"); *see also CMG Financial Services, Inc. v. Pacific Trust Bank*, No. CV 11-10344-PSG, Dkt. 164, at p. 11 (C.D. Cal. Aug. 29, 2014) ("Claim construction would not assist the Court in resolving the § 101 issue"); s*ee*

---

[1] Because the decision in *Ultramercial* has been vacated, it no longer has precedential effect. *See Cnty. of L.A. v. Davis*, 440 U.S. 625, 634 n. 6 (1979) ("Of necessity, our decision 'vacating the judgment of the Court of Appeals deprives that court's opinion of precedential effect . . . .'").

*also* Capstone Br., pp. 6-8. The one case Wolf cites where the Court decided to wait for claim construction does not provide a clear record for why the Court held this minority view. *Data Distrib. Tech. v. Brer Affiliates, Inc.,* 2014 WL 4162765 (D. N.J. Aug. 19, 2014). Even then, however, the court carefully noted that it could decide the issue prior to the outcome of claim construction if Plaintiff's proposed construction would not alter the analysis. *Id.* at *15, no. 5.

Moreover, to the extent Wolf argues that claim construction is necessary, Wolf should have identified how any purported claim construction dispute pertains to the § 101 issue at hand. Wolf's Opposition fails to do this. Though Wolf identifies claim terms that it alleges need to be construed, Wolf fails to identify any construction and fails to explain how any such proposed claim construction would affect the § 101 analysis. Wolf Opp., pp. 5-6. *See CyberFone Sys. LLC v. CNN Interactive Grp., Inc.,* 558 F. App'x 988, 992 n. 1 (Fed. Cir. 2014) (Because plaintiff did not explain how claim construction would alter the § 101 analysis, claim construction was not necessary, and "[T]here is no requirement that the district court engage in claim construction before deciding § 101 eligibility."); *see also Eclipse IP*, 2014 WL 4407592 at *6.

Lastly, if a patentee were able to defeat a motion to dismiss, or a judgment on the pleadings, under § 101 simply by raising the prospect of a claim construction dispute, then such motions would rarely succeed. Here, Wolf has emphasized the high cost of defending a patent litigation suit to pressure Capstone to settle. As Judge Mayer noted above, an early determination on patent eligibility issues can spare both litigants and courts years of needless litigation. Given the recent *Alice* decision, the plethora of cases allowing for a Court to decide this motion without the need for claim construction, and Wolf's failure to identify how claim construction would alter the § 101 analysis, Capstone submits that this Motion is ripe.

### B. Further "Appellate Guidance" Is Not Required As *Alice* Establishes a Clear Two-Part Test.

The Supreme Court in *Alice* fundamentally altered the test for determining whether computer-implemented inventions are patentable. The Supreme Court specified a two-part test: First, a court must "identify the abstract idea represented in the claim." *Alice*, 134 S. Ct. at 2353. Then, the court must determine whether the claim contains an "inventive concept" to transform the abstract idea into a patent-eligible invention. *Id.* at 2355. This holding provided well-needed clarity and settled an important question regarding the status of computer-implemented inventions. *See Eclipse IP*, 2014 WL 4407592 at *3 ("Alice did categorically establish a clear rule that had previously been subject to debate: 'mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention.'"). Since the *Alice* decision in June of this year, courts have routinely invalidated claims under §101.

Despite this clarity, Wolf's Opposition remarkably argues that "there is insufficient guidance for district courts to decide these motions" and states that this Court "may not want to wade into deciding patent eligibility before further appellate guidance is better developed." Wolf Opp., pp. 1, 6. Wolf's argument is nonsensical, and appears to be a delay tactic to prevent the Court from deciding the merits of this motion. The following list identifies post-*Alice* cases, including those from the Federal Circuit and this district, where courts have not waited for "further appellate guidance" before deciding to invalidate the patents at issue under § 101 for claiming ineligible subject matter:

- *BuySAFE, Inc. v. Google, Inc.*, No. 2012-1575 (Fed. Cir. Sept. 3, 2014)
- *Planet Bingo, LLC v. VKGS, LLC,* 2014 WL 4195188 (Fed. Cir. Aug. 26, 2014)
- *Digitech Image Techs. v. Electronics for Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014)
- *McRO, Inc. v. Naughty Dog, Inc.*, 2014 WL 4758417 (C.D. Cal. Sept. 22, 2014)
- *Eclipse IP LLC v. McKinley Equipment Corp.,* 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014)

- *CMG Financial Services, Inc. v. Pacific Trust Bank*, No. CV 11-10344-PSG, Dkt. 164 (C.D. Cal. Aug. 29, 2014)
- *Open Text S.A. v. Alfresco Software Ltd.*, No. 13-CV-4843 (N.D. Cal. Sept. 19, 2014)
- *Genetic Technologies Ltd. v. Laboratory Corp. of America*, 2014 WL 4379587 (D. Del. Sept. 3, 2014)
- *Tuxis Technologies LLC v. Amazon.com, Inc.*, No. CV 13-1771-RGA (D. Del. Sept. 3, 2014)
- *Walker Digital, LLC, v. Google, Inc.*, No. 11-318 (D. Del. Sept. 3, 2014)
- *Comcast IP Holdings v. Sprint Communications*, No. 12-205 (D. Del. July 16, 2014)
- *Loyalty Conversion Systems Corp. v. American Airlines, Inc.*, No. CV 13-655, Dkt. 129 (E.D. Tex. Sept. 3, 2014)
- *Every Penny Counts v. Wells Fargo Bank*, No.11-CV-2826-T (M.D. Fla. Sept. 11, 2014)
- *Dietgoal Innovations LLC v. Bravo Media LLC*, No. 13-cv-8391 (S.D.N.Y July 8, 2014)

As these cases show, Wolf's argument that the Court should delay ruling pending further guidance is misplaced.[2]

### C. *Alice* Does Not Require Analyzing The Prior Art Before Deciding This Motion.

Throughout its Opposition, Wolf repeatedly criticizes Capstone for its alleged failure to cite adequate prior art. *See, e.g.,* Wolf Opp., pp. 2, 10, 16 ("Defendants cite no prior art that would make these elements commonplace"; "Defendants' motion also lack sufficient prior art facts"; "Defendants cannot establish the state of the prior art necessary for their analysis"; "the claim has at least three elements . . . for which Defendants have no

---

[2] Wolf's Opposition cites to a magazine article interviewing a former, and now retired, Federal Circuit Judge on his personal opinions of the *Alice* decision. Dkt. 45-1, Exh. 4. His comments are irrelevant, and constitute inadmissible hearsay. In any event, the number of courts that have ruled on § 101 issue after the *Alice* decision belies his comments.

prior art"). These statements reveal a fundamental misunderstanding of Capstone's Motion.

Capstone's Motion does not seek to invalidate the asserted patents based upon novelty or obviousness. Under such a basis, Capstone would be required to come forward with prior art to show how each and every element of the claim is found in the prior art. *See generally* 35 U.S.C. §§102, 103. The instant Motion, rather, seeks to invalidate the patents under 35 U.S.C. § 101 for claiming ineligible subject matter. It is a canon of patent law that whether a patent is novel or non-obviousness has no relevance in determining whether the patent falls within the § 101 requirements for patentability. *Diamond v. Diehr*, 450 U.S. 175, 188-89 (1981) ("The 'novelty' of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter."). Indeed, neither the *Alice* test, nor any prior test set forth by the Supreme Court or Federal Circuit, requires the Court to examine each claim element and determine whether each element exists in the prior art. *See generally Alice*, 134 S. Ct. 2347 (where the Supreme Court did not analyze any prior art).

### D.   No Factual Disputes Need to Be Resolved.

Wolf's Opposition also argues that the "necessary facts are unavailable in a motion on the pleadings." Wolf Opp., pp. 9, 25. First, the issue of invalidity under § 101 presents a question of law. *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir. 2013). Second, Capstone's Motion is one for judgment on the pleadings, and Wolf has not identified any material fact in the Amended Complaint (or even outside the Amended Complaint) that is in dispute.

In its Opening Brief, Capstone cited to a number of cases where courts decided a § 101 issue via a Rule 12 motion, prior to any factual development or discovery. *See generally* Capstone Br., pp. 6-8; s*ee also Loyalty Conversion Systems Corp.*, No. CV 13-655, Dkt. 129, at p. 8 (in deciding a Rule 12(c) Motion, "the parties have not pointed to any

7

factual issues that could affect the Court's analysis of the section 101 issue."); *Eclipse IP.,* No. 2014 WL 4407592 at *6 (in deciding a Rule 12(b)(6) motion, "further development of the factual record" is not required "before addressing the §101 issue").

In its effort to manufacture a factual dispute, Wolf provides a declaration from himself stating that one of his competitors said in an interview that he was skeptical of whether the "idea of taking event photos and putting them online" would work. Wolf Opp., p. 9; Dkt. 45-2, ¶ 7.[3] This has no relevance to the § 101 issue under *Alice.* As discussed in the preceding section, the issue at hand does not concern whether searching for sporting event photos using a bib number or other identifiable data on the Internet was a novel idea; rather the issue is whether such an idea is eligible for patent protection. Even where parties have submitted expert declarations, which is not the case here, courts have ruled that factual disputes do not exist *See, e.g., Walker Digital,* No. 11-318 at p. 10, n.3 ("Although Google did not present expert testimony to rebut Dr. Willis, the Court concludes that Dr. Willis' testimony raises no material factual disputes between the parties."). Wolf has not, and cannot, point to any factual issue that would affect the Court's analysis of the § 101 issue.

Lastly, Wolf again relies on *Ultramercial* as precedent to argue that a § 101 determination contains factual issues. Wolf Opp., p. 9. As noted above, the *Ultramercial* decision has been vacated in its entirety and is no longer good law. The *Alice* test that replaced the prior tests used in *Ultramercial* does not hinge on factual issues. Indeed, Capstone is not aware of any other Federal Circuit case suggesting §101 is rife with factual issues, and the Supreme Court in *Alice* similarly did not state that a § 101 inquiry contains factual issues.

---

[3] Though irrelevant to the § 101 issue, Wolf's declaration also contains inadmissible hearsay at ¶¶ 5-7, and these paragraphs should be struck. *See, e.g.,*Dkt. 45-2, ¶¶ 5-7.

### III. *ALICE'S* TWO-STEP FRAMEWORK RENDERS THE CLAIMS OF THE ASSERTED PATENTS INELIGBILE FOR PATENT PROTECTION

#### A. The "Clear and Convincing" Standard Does Not Apply In This Case.

As a preliminary matter, Wolf is incorrect when arguing that Capstone must prove subject matter ineligibility under a "clear and convincing" standard. Wolf Opp., p. 7. The Supreme Court has noted that this "clear and convincing" standard does not apply to the resolution of pure questions of law. *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242-43 (2011); *see also id.* at 2253 (Breyer, J. concurring) ("[T]he evidentiary standard of proof applies to questions of fact and not to questions of law" such that "a factfinder must use the 'clear and convincing' standard where there are [factual] disputes about, say, when a product was first sold or whether a prior art reference had the correct answer to legal questions."). Thus, in such cases "[w]here the ultimate question of patent validity turns on the correct answer to legal questions . . . [the clear and convincing standard] has no application." *Id.* Surely, no burden of proof was cited or applied in the recent Supreme Court cases analyzing the § 101 issue. *See generally Mayo Collaborative Serv. v. Prometheus Laboratories*, 132 S. Ct. 1289 (2012); *Alice*, 134 S. Ct. 2347; and *Bilski*, 130 S. Ct. 3218.

Here, the question of patent invalidity is a legal one. And, as noted above, Wolf, has not identified the existence of any disputed fact issues. As such, the clear and convincing standard has no application. *See also Genetic Technologies,* 2014 WL 4379587 at *14, n. 5 ("The Supreme Court has noted that this 'clear and convincing' standard does not apply to the resolution of pure questions of law"). Wolf's repeated insistence on "clear and convincing" is a legally incorrect sideshow.

#### B. The Asserted Patents Are Directed To An Abstract Idea.

The first prong under the *Alice* test is to determine whether the claims are directed to an abstract idea. *Alice*, 134 S. Ct. at 2353. As stated in Capstone's Opening Brief, the claims of the '875 and '214 patents recite the abstract idea of selecting and distributing photos of a race using a bib number or other identifying information. The claims of the

9

'035 patent are directed to the same abstract idea, but add the additional idea of inserting an advertisement on the photo.

Wolf's Opposition argues that the "patents do not claim an abstract idea." Wolf Opp., p. 14. To support this, Wolf provides a claim chart using representative claim 1 of the '214 patent and argues that this claim "has at least three concrete elements (informing, cataloging, and displaying) for which Defendants have not prior art" and then concludes that "the claim is not abstract under Part 1 of the patent eligibility test." Wolf Opp., p. 16. Wolf responds similarly for the '035 patent. Wolf Opp., pp. 17-18.

Wolf's analysis fails for a number of reasons. First, breaking up a claim element-by-element and arguing that Defendant does not identify prior art has no relevance to a § 101 inquiry. As noted above, whether prior art discloses each element of a claim is relevant under a §§ 102/103 analysis for anticipation or obviousness, not for subject matter inquiry. Indeed, neither in the *Alice* case, nor the *Bilski* case did the Court analyze whether a defendant had proffered prior art for each element of the claim. *See generally Alice,* 134 S. Ct. 2347; *Bilski*, 130 S. Ct. 3218. As Wolf even cites in its Opposition, "the 'abstract idea' analysis focuses on the patent claims as a whole and not on an individual claim or claim limitation." Wolf Opp., p. 11.

Equally misplaced is Wolf's argument that the claims' inclusion of "concrete" steps, such as "informing, cataloging, and displaying," somehow confers patentability on the abstract idea found in the claims. Wolf Opp., p. 16. These are merely steps required to perform the abstract idea. Every abstract idea, once performed, must have some concrete implementation in the real world. Wolf cannot escape the ineligibility of its patents by arguing that its patents claim such elements. These types of steps can be found in virtually every patent claim held to be invalid under § 101. *See, e.g., CLS Bank Int'l v. Alice Corp. Pty.,* 717 F.3d 1269, 1285 (Fed. Cir. 2013), *aff'd* by *Alice*, 134 S. Ct. 2347 (holding claims at issue to be invalid under § 101 where claims include the steps of "creating," "obtaining," "adjusting" and "instructing"); *see also Planet Bingo,* 2014 WL 4195188 at *3 (affirming claims at issue to be invalid under § 101 for claims that include the steps of "storing,

retrieving, and verifying"). Indeed, the claims of every patent at issue in the cases cited above at Section II.B involve similar "concrete" steps as claimed in Wolf's asserted patents.

Further, Wolf relies heavily on *Ultramercial,* 722 F.3d, 1335 to argue that its claims are not abstract. Wolf Opp., pp. 14-18. As noted above, however, the Supreme Court vacated the holding on which this analogy relies. The eligibility test used in *Ultramercial* to determine abstractness no longer applies. Under *Alice*, a process is not rendered patent-eligible by merely claiming "concrete" steps to implement the abstract idea. *Alice*, 134 S. Ct. at 2356-57.

Lastly, Wolf argues that Capstone's analysis fails because Capstone improperly seeks to invalidate all 84 claims of the three asserted patents without analyzing each claim separately. Wolf Opp., p. 9. *Alice* does not require such an analysis. Indeed, in *Alice,* the Supreme Court affirmed the judgment of the district court invalidating all 208 asserted claims across four patents. *See CLS Bank Intern.*, 717 F.3d at 1285 ("Briefly, the asserted claims are as follows: claims 33 and 34 of the '479 patent . . . all claims [1-75] of the '510 patent . . . all claims [1-84] of the '720 patent . . . and the claims [1-47] of the '375 patent."). When analyzing these claims, the Supreme Court treated claim 33 as representative, and stated that "the claims at issue relate to a computerized scheme for mitigating 'settlement risk.'" *Alice*, 134 S. Ct. at 2352. The Court further summarized the claims by stating that "[A]ll of the claims are implemented using a computer." *Id.* at 2353. The Court did not, as Wolf suggests here, separately analyze each claim. All claims were directed to the same ineligible abstract idea of mitigating settlement risk and all claims attempted to implement that abstract idea using a generic computer. *Id.* The same applies here. As stated in Capstone's Opening Brief, all claims are directed to the same abstract idea, with only minor variations in how to implement elements of the idea. To the extent Wolf disagreed, he should have identified any claims or groups of claims in the asserted patents which steer away from the abstract idea of selecting and ordering photos of a race using a bib number or other identifiable data. Wolf's Opposition failed to do this.

### C. The Asserted Patents' Use Of A Generic Computer Network To Implement The Abstract Idea Is Not An "Inventive Concept."

The Court in *Alice* described this second step of the analysis as "a search for an 'inventive concept.'" *Alice*, 134 S. Ct. at 2355. The "introduction of a computer into the claims does not alter the analysis." *Id.* at 2357. Capstone argued in its Opening Brief that the asserted patents merely take the abstract idea of selecting and distributing photographs of a race using a bib number or other identifying data, and applies it on a generic computer network. Capstone Br., pp. 14-17. *Alice* made clear this is not enough. *Alice*, 134 S. Ct. at 2358.

Wolf's Opposition fails to identify any "inventive concept" beyond the abstract idea of selecting and ordering photos of a race using a bib number or other identifying data. Wolf asserts that the "claims also include numerous limitations that narrow the scope of the patents" and then cited claim language containing the terms "associating," "identifying," "informing," *etc*. Wolf Opp., p. 21. Wolf invites legal error. The same argument could be made for every court decision finding claims ineligible, including *Alice*. In *Alice,* specific details of managing accounts and shadow accounts among various institutions were claimed, including "specific hardware" such as a "data processing system with a communications controller and data storage unit for example." *Id.* at 2360. This was "not enough." *Id.* The Court held that these limitations did not add inventive concepts that render an abstract idea patent eligible. *Id.*

Wolf's Opposition does not deny Capstone's fundamental argument that Wolf's invention boils down to a method to computerize the abstract idea of selecting and ordering photos of a race using a bib number or other identifiable data. Wolf's own declaration states as much. Wolf submitted a declaration in support of his Opposition wherein he states "[S]o in 1999, participants searching for their own photos on the Internet, using identifying data such as a bib number or time, was not commonplace." Dkt. 45-2, ¶ 8. Wolf made this statement evidently to show that his patent was novel. Again, novelty has no relevance to the § 101 inquiry. *Diamond*, 450 U.S. at 188-89. Even if Wolf's invention

12
**REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS**

is novel (Capstone disputes this), the relevant inquiry is whether this invention is even worthy of patent protection as a threshold issue. Under *Alice*, it is not.

In *Alice*, the Supreme Court held that the introduction of a computer into the claims did not render the claims patentable. In analyzing step two of the test, the Court stated that "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2358. For step two, the Court analogized the facts to its guidepost cases of *Bilski, Mayo, Benson, Flook,* and Diehr. *Id.* at 2357-58. The Court held that "[u]sing a computer to create and maintain 'shadow' accounts amounts to electronic recordkeeping – one of the most basic functions of a computer . . . [and] [T]he same is true with respect to the use of a computer to obtain data, adjust account balances, and issue automated instructions." *Id*. at 2359. The Court concluded that these limitations did not "improve the functioning of the computer itself . . . [n]or do they effect an improvement in any other technology or technical field." *Id.* at 2359-60. The Court further stated that the claims at issue amounted to "nothing significantly more" than the abstract idea using "some unspecified, generic computer." *Id.* at 2360. The claims were, therefore, held unpatentable under § 101. *Id.*

The asserted patents here similarly fail to transform the abstract idea into a patent-eligible invention. The '875 and '214 patents claim the basic idea of selecting and ordering photos of a race using a bib number or other identifiable data on a generic computer network (such as the web or internet). The role of the computer network in the claims of the '875 and '214 patents is limited to the basic functions of a generic computer network that can merely store the photos on a web-site server for quicker selection and inspection. *See* Capstone Br., pp. 3-5. Similarly, the '035 patent claims the use of a generic "electronic device" to perform the abstract idea of inserting an advertisement in the photograph. The specification makes clear than any generic electronic device will suffice. '035 patent, col. 6:12-14. In its Opening Brief, Capstone cited to a number of Federal Circuit cases where the court held that computerizing a conventional method does not make the idea patentable. Capstone Br., pp. 15-16. Wolf's Opposition failed to distinguish

any of these cases. *See also BuySAFE, Inc.*, No. 2012-1575 at p. 9 ("The claims' invocation of computers adds no inventive concept. The computer functionality is generic – indeed, quite limited: a computer receives a request for a guarantee and transmits an offer of guarantee in return. There is no further detail."); *Planet Bingo,* WL 4195188 at *3 ("Instead, the claims recite a [computer] program that is used for the generic functions of storing, retrieving, and verifying a chosen set of bingo numbers . . . .").

Wolf's reliance on *Autoform Eng'g v. Eng'g Tech. Assoc.*, 2014 WL 4385855 (E.D. Mich. Sept. 5, 2014) is misplaced. Wolf cites *Autoform* to argue that the claims at issue contain an inventive concept. Wolf Opp., p. 20. Yet, in *Autoform*, the court never reached the second step of the *Alice* test and never analyzed whether the claims contained an "inventive concept." *Id.* at *4. Further, the patent was directed to a specific application involving design sheet metal tools, and are very different from the claims at issue here.

Wolf also relies on *McRO*, 2014 WL 4758417. *McRO* actually supports Capstone's argument. In *McRO,* the court granted the motion for judgment on the pleadings and held that the asserted patents were unpatentable under § 101. *McRO*, 2014 WL 4758417. In determining this, the Court looked at the patent specification to see how it described the invention in light of the existing prior art (*i.e.*, prior art cited in the patent specification, not any prior art cited by Defendants). *Id.* at *10. The court stated that a "consideration of the prior art recited in the patents shows that the point of novelty here is the idea of using rules . . . to automate the process of generating keyframes." *Id.* The court then concluded that the use of rules to automate the process is tantamount to claiming an abstract idea while adding the words "apply it." *Id.* at *11.

A similar reasoning applies here. The shared specification of the '875 and '214 patents makes clear that the "present invention" describes the basic idea of how to select and order photos of a race using a bib number or other identifying data. The patent then implements this idea via a computer network, such as a web-site on the internet. Col. 1:14-17 ("[T]he present invention relates to a process for providing event photographs for inspection, selection and distribution via a computer network, such as a web-site on the

Internet."). The method of the '875 patent is further described within the specification of the '035 patent as an "on-line method" to speed up the manual process of providing sporting event photographs and to do so "very rapidly." '035 patent, col. 1:38-43. *See Alice*, 134 S. Ct. at 2360 ("the claims at issue amount to 'nothing significantly more' than an instruction to apply the abstract idea of intermediated settlement using some unspecified, generic computer"). Thus, similar to *McRo*, the use of a generic computer network here to "automate" the process is tantamount to claiming an abstract idea while adding the words "apply it." *McRO*, 2014 WL 4758417 at *11.

Lastly, regarding preemption, Wolf argues that his "patent claims are not abstract because they do not disproportionately tie up the use of the underlying ideas." Wolf Opp., p. 23. Wolf is wrong, but he also muddies the analysis. Preemption concerns step two under *Alice* – *i.e.,* whether sufficient inventive concepts have been added. *Alice*, 134 S. Ct. at 2358 ("This conclusion accords with the pre-emption concern that undergirds our § 101 jurisprudence."). Further, Wolf argues that Capstone may have certain non-infringement defenses. Wolf Opp., pp. 23, 24. Wolf's proposed rule of preemption to identify various claim elements and then argue for non-infringement, if accepted, would render meaningless the §101 analysis. Wolf's preemption analysis transforms the inquiry into one of infringement and, in the process, would allow any abstract idea, once written in claim language, to evade a proper § 101 analysis. Wolf's idea of selecting and ordering photos of a race using a bib number or other identifiable data, via any generic computer network, would cover any such method to select sporting event photos on-line, preempting this approach. The same holds true for the '035 patent that uses a generic "electronic device" to perform the idea of inserting an advertisement in the photograph. *Bilski*, 130 S. Ct. at 3218 (upholding the patent "would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea.").

15
**REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS**

## IV. CONCLUSION

The asserted patents are invalid because they all claim an abstract idea using generic and conventional computer technology. This is insufficient to transform the idea into a patent-eligible invention under 35 U.S.C. § 101.

Dated: October 6, 2014            **ONE LLP**

By: /s/ J. Lord
John E. Lord

*Attorneys for Defendants,*
CAPSTONE PHOTOGRAPHY, INC.
AND MICHAEL SKELPS

**REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS**