### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 2:13-CV-09573 | Date | October 28, 2014 |
|---|---|---|---|
| Title | PETER WOLF v. CAPSTONE PHOTOGRAPHY, INC., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:**     (IN CHAMBERS)  DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (Dkt. No. 42, filed September 15, 2014)

## I.    INTRODUCTION

This case presents an issue of patent subject matter eligibility.  On December 31, 2013, plaintiff Peter Wolf ("Wolf") filed this lawsuit against defendants Capstone Photography, Inc. ("Capstone"), Michael Skelps, and ten Does.  Dkt. No. 1.  On July 17, 2014, plaintiff filed the First Amended Complaint ("FAC").  Dkt. No. 32.  In brief, the FAC alleges that defendants have infringed three patents covering methods of inspecting, selecting, distributing, and advertising on photographs taken at races and other events. Id.  On September 15, 2014, defendants filed a motion for judgment on the pleadings. Dkt. No. 42.  Plaintiff filed an opposition on September 29, 2014.  Dkt. No. 45. Defendants replied on October 6, 2014.  Dkt. No. 47.  On October 20, 2014, the Court held a hearing at which counsel for both parties appeared.  After considering the parties' arguments, the Court concludes that the motion should be granted for the reasons explained below.

## II.    BACKGROUND

The FAC alleges the following facts.  Plaintiff is the president of PhotoCrazy, a business engaged in the business of taking and providing event photographs for inspection, selection, and distribution via a computer network.  FAC ¶ 10.  In 2006, plaintiff obtained U.S. Patent Numbers 7,047,214 ("the '214 patent") and 6,985,875 ("the '875 patent").  Id. ¶ 12; see id. Exs. A, B.  The '214 and '875 patents, both entitled, "Process for Providing Event Photographs for Inspection, Solution and Distribution via a Computer Network," share essentially the same specification and claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-09573 | | Date | October 28, 2014 |
|---|---|---|---|---|
| Title | PETER WOLF v. CAPSTONE PHOTOGRAPHY, INC., ET AL. | | | |

Independent claim 1 of the '875 patent, practically identical to claim 1 of the '214 patent and representative of both patents' subject matter, claims:

A process providing event photographs of a sporting event for inspection, selection and distribution via a computer network, comprising the steps of:

taking photographs of at least one participant of a sporting event along at least one point of a course or field thereof;

associating identifying data with each photograph taken, wherein the identifying data is selected from at least one of: a number corresponding to a number worn by a participant, a participant's name, a code acquired from a component worn by a participant, and a date and time, including hour and minute the photograph was taken;

informing the sporting participants of the identifying data;

transferring the photographs to a computer network server;

cataloging each of the photographs in a web-site server according to identifying data;

accessing the server at a location other than the sporting event and searching for a photograph of a particular sporting event participant utilizing the identifying data; and

displaying the photograph of the sporting event participant for inspection and ordering.

'875 patent Col. 5:38-61.  The dependent claims of the '214 and '875 patents largely identify variations of claim 1.  For example, claims 3 through 10 pertain to different types of identifying data.  See, e.g., id. Col. 5:66–6:3 ("3. The process of claim 1, wherein the identifying data comprises a code acquired from the component worn by the sporting event participant, including the step of triggering a camera to take a photograph when the component passes a predetermined point."); id. Col. 6:7-8 ("5. The process of claim 3,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-09573 | | Date | October 28, 2014 |
|---|---|---|---|---|
| Title | PETER WOLF v. CAPSTONE PHOTOGRAPHY, INC., ET AL. | | | |

wherein the component comprises a passive component."). Similarly, independent claims 16, 24, and 29 are almost identical to claim 1, but limit the identifying data to particular types. See id. Col. 6:44-65, 7:29:-48, 8:4-25. Other dependent claims recite details of claim 1's steps: claim 12 recites the use of a "digital camera electronically connected to the server,"; claim 13 details "ordering a photograph of the event using the server and fulfilling the order by sending the photograph"; and claims 14 and 15 recite "mailing" and "electronically transferring" the ordered photograph, respectively. Id. Col. 6:12-42.

The specification explains that event photography traditionally relied on the bib numbers worn by event participants to identify participants and match developed photographs to listed names and addresses. Id. Col. 1:18-28. A thumbnail photographic image was then printed and mailed to each participant along with an order form, which the participant could use to order photographs by mail. Id. Col. 1:29-38. According to the specification, this method was time-consuming, costly, and too heavily reliant on visual identification. Id. 1:39-46. The claimed invention purports to solve those problems by obviating the need to rely on bib numbers through the use of other identifying details, and allowing participants to search for and order photographs without the need for multiple mailings. Id. Col. 1:58-67. Instead, photographs may be ordered online, and the order is fulfilled through electronic transmission or printing and physical mailing responsive to the online order. Id. Col. 2:42-52. The specification also includes a detailed description of preferred embodiments, id. Col. 3:1–5:31, although it stresses that "various modifications may be made without departing from the scope and spirit of the invention" and that the "invention is not to be limited, except as by the appended claims," id. Col. 5:32-36.

In 2011, plaintiff obtained U.S. Patent Number 7,870,035 ("the '035 patent"), titled, "Advertising and Distribution Method for Event Photographs." FAC ¶ 12; see id. Ex. C. The specification largely covers processes included in the two aforementioned patents, but also details a process by which participants can order a free or reduced-price photograph with "[v]isual advertiser indicia, such as the advertiser name or log, [] associated within the field" of the photograph," typically "in a corner or a margin of the photograph." '035 patent Col. 2:36-46. Independent claim 1 of the '035 patent claims

A method for providing on-line event photographs, comprising the steps of:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-09573 | | Date | October 28, 2014 |
| --- | --- | --- | --- | --- |
| Title | PETER WOLF v. CAPSTONE PHOTOGRAPHY, INC., ET AL. | | | |

capturing multiple photographs of sporting event participants during a
sporting event;

associating identifying data with each photograph taken and storing the
photographs in a database;

accessing the database and searching for a photograph utilizing the
identifying data and selecting a digital photograph;

utilizing an electronic device to create a field in the selected digital
photograph and associate visual advertiser indicia within the field; and

transferring the selected photograph containing the visual field with
advertiser indicia to a requestor.

Id. Col. 8:58–9:5.  Dependent claims 2 through 13 provide additional details and
variations regarding claim 1's steps.  See, e.g., id. Col. 9:6-10 ("2. The method of claim 1,
wherein the associating step comprises the step of associating at least one of: a time the
photograph was captured, a name of the individual photographed, a number worn by the
individual photographed, or a code from a device worn by the individual
photographed."); id. Col. 9:17-19 ("5. The method of claim 1, wherein the creating step
includes the step of creating a visual field in a corner or a margin of the digital
photograph.").  The remaining independent claims are similar to, but more detailed than,
claim 1.  For example, claim 21 recites:

A method for providing on-line event photographs, comprising the steps
of:

capturing multiple photographs of sporting event participants during a
sporting event;

associating identifying data with each photograph taken, including
associating at least one of: a time the photograph was captured, a
name of the sporting event participant photographed, a number worn
by the sporting event participant photographed or a code from a
device worn by the sporting event participant photographed;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-09573 | Date | October 28, 2014 |
|---|---|---|---|
| Title | PETER WOLF v. CAPSTONE PHOTOGRAPHY, INC., ET AL. | | |

accessing a server and searching for a photograph utilizing the
    identifying data;

posting one or more photographs of a low quality resolution or
    containing a watermark in response to an identifying data search;

selecting and ordering a digital photograph;

creating a final digital photograph having a high resolution without a
    watermark, and including a field in a corner or margin of the digital
    photograph and associating visual advertiser indicia, including an
    advertiser name or logo within the field;

electronically transferring the final digital photograph containing the
    visual field with advertiser indicia to a user's electronic device by
    downloading the final digital photograph to the user's electronic
    device or sending the user an electronic message including the final
    digital photograph or a link to download the final digital photograph.

Id. Col. 10:26-53.

Plaintiff alleges that defendants "are engaged in the business of providing event
photographs for inspection, selection and distribution via the Internet" through
defendants' website. FAC ¶ 14. Plaintiff also contends that defendants "are offering to
provide selected digital photographs with visual advertiser indicia within the photograph
field to race participants." Id. Plaintiff avers that these activities constitute willful
infringement of the three patents, collectively referred to as the "patents in suit." See
generally FAC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-09573 | | Date | October 28, 2014 |
|---|---|---|---|---|
| Title | PETER WOLF v. CAPSTONE PHOTOGRAPHY, INC., ET AL. | | | |

## III.   LEGAL STANDARD

### A.   Motion for Judgment on the Pleadings

A motion for judgment on the pleadings brought pursuant to Fed. R. Civ. P. 12(c) provides a means of disposing of cases when all material allegations of fact are admitted in the pleadings and only questions of law remain.  See McGann v. Ernst & Young, 102 F.3d 390, 392 (9th Cir. 1996).  Such a motion may be brought "after the pleadings are closed–but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  "Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy."  Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012).  Accordingly, while the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "[F]actual allegations must be enough to raise a right to relief above the speculative level."  Id.

In considering a Rule 12(c) motion, as with a 12(b)(6) motion, the district court must view the facts presented in the pleadings and the inferences to be drawn from them in the light most favorable to the nonmoving party.  NL Indus. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986); In re Century 21-Re/Max Real Estate Adver. Claims Litig., 882 F. Supp. 915, 921 (C.D. Cal. 1994).  However, "[i]n keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (citing Twombly and Iqbal).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 129 S.Ct. at 1950.  For purposes of a Rule 12(c) motion, the moving party concedes the accuracy of the factual allegations of the complaint, but does not admit

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-09573 | Date | October 28, 2014 |
|---|---|---|---|
| Title | PETER WOLF v. CAPSTONE PHOTOGRAPHY, INC., ET AL. | | |

other assertions that constitute conclusions of law or matters that would not be admissible in evidence at trial.  5C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 1368 (3d ed. 2004).

Unless a court converts a Rule 12(b)(6) or 12(c) motion into a motion for summary judgment, a court generally cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials).  In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998).  A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201.  In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see also Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

### B. Patentable Subject Matter Under 35 U.S.C. § 101

A patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  35 U.S.C. § 101. This provision "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable."  Alice Corp. Pty. Ltd. v. CLS Bank Int'l, --- U.S. ---, 134 S. Ct. 2347, 2354 (2014) (quoting Ass'n for Molecular Pathology v. Myriad Genetics, Inc., --- U.S. ---, 133 S. Ct. 2107, 2116 (2013)).  This important limitation recognizes that "mental processes[] and abstract intellectual concepts" are among "the basic tools of scientific and technological work."  Gottschalk v. Benson, 409 U.S. 63, 67 (1972).  However, "the application of these concepts to new and useful ends remains eligible for patent protection."  Planet Bingo, LLC v. VKGS LLC, --- Fed. App'x ---, 2014 WL 4195188, at *1 (citing Alice, 134 S. Ct. at 2355).  Still, "a claim reciting an abstract idea does not become eligible merely by adding the words 'apply it.'"  Digitech Image Techs., LLC v. Electronics for Imaging, Inc., 758 F.3d 1344, 1350 (Fed. Cir. 2014) (quoting Bancorp Servs., LLC v. Sun Life Assur. Co. of Can. (U.S.), 687 F.3d 1266, 1276 (Fed. Cir. 2012)).  "Accordingly, the Court has described a framework for identifying patent-eligible claims, wherein a court must determine whether the claims at issue are directed to a patent-ineligible concept and, if so, whether additional elements in the claims transform the claims into a patent-eligible application."  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-09573 | Date | October 28, 2014 |
|---|---|---|---|
| Title | PETER WOLF v. CAPSTONE PHOTOGRAPHY, INC., ET AL. | | |

> First, [courts] determine whether the claims at issue are directed to
> one of those patent-ineligible concepts. If so, [courts] then ask,
> "[w]hat else is there in the claims before us?" To answer that
> question, [courts] consider the elements of each claim both
> individually and "as an ordered combination" to determine whether
> the additional elements "transform the nature of the claim" into a
> patent eligible application. [The Supreme Court] has described step
> two of this analysis as a search for an "'inventive concept'"–i.e., an
> element or combination of elements that is "sufficient to ensure that
> the patent in practice amounts to significantly more than a patent upon
> the [ineligible concept] itself."

Alice, 134 S. Ct. at 2355 (citations omitted) (some brackets in original). The underlying
"concern" behind § 101's limitations is "'that patent law not inhibit further discovery by
improperly tying up the future use' of these building blocks of human ingenuity." Id. at
2354 (quoting Mayo Collaborative Servs. v. Prometheus Labs., Inc., --- U.S. ---, 132 S.
Ct. 1289, 1301 (2012)).

"Issues of patent-eligible subject matter are questions of law." CyberSource Corp.
v. Retail Decisions, Inc., 654 F.3d 1366, 1369 (Fed. Cir. 2011); see Accenture Global
Servs., GmbH v. Guidewire Software, Inc., 728 F.3d 1336, 1340–41 (Fed. Cir. 2013)). In
attempting to invalidate a patent on § 101 grounds, a challenger must overcome the
presumption that "every issued patent is presumed to have been issued validly absent
clear and convincing evidence to the contrary." Open Text S.A. v. Alfresco Software
Ltd., No. 13-CV-4843, 2014 WL 4684429, at *3 (N.D. Cal. Sept. 19, 2014); see State
Contracting & Eng'g Corp. v. Condotte Am., Inc., 346 F.3d 1057, 1067 (Fed. Cir. 2003)
("A party seeking to establish that particular claims are invalid must overcome the
presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence."); Lumen
View Tech. LLC v. Findthebest.com, Inc., 984 F. Supp. 2d 189, 194 (S.D.N.Y. 2013).
Put differently, prior to claim construction, "a patent claim can be found directed towards
patent ineligible subject matter if the 'only plausible reading of the patent must be that
there is clear and convincing evidence of ineligibility.'" Tuxis Techs., LLC v.
Amazon.com, Inc., No. CV 13-1771-RGA, 2014 WL 4382446 at *2 (D. Del. Sept. 3,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-09573 | | Date | October 28, 2014 |
|----------|---------------|---|------|------------------|
| Title | PETER WOLF v. CAPSTONE PHOTOGRAPHY, INC., ET AL. | | | |

2014) (quoting <u>Ultramercial, Inc. v. Hulu, LLC</u>, 722 F.3d 1335, 1339 (Fed. Cir. 2013) (emphasis in original), vacated, 134 S. Ct. 2870 (2014).[1]

---

[1]Defendants argue that the "clear and convincing" standard is inapplicable. In support, they cite Justice Breyer's concurring opinion in <u>Microsoft v. i4i Ltd. Partnership</u>, which stressed that the "clear and convincing" standard "applies to questions of fact and not to questions of law." 131 S. Ct. 2238, 2253 (2011) (Breyer, J., concurring). Justice Breyer explained that "[m]any claims of invalidity rest, however, not upon factual disputes, but upon how the lap applies to facts as given." <u>Id.</u> The majority opinion in that case, joined by seven of the eight justices participating in the case, described and validated the longstanding view that patent ineligibility had to be proven by a high standard of proof, a view which had predated the enactment of § 282 and had been unwaveringly applied by the Federal Circuit without correction from Congress. <u>Id.</u> at 2242–2252 (majority opinion). The Court held that "§ 282 requires an invalidity defense to be proved by clear and convincing evidence." <u>Id.</u> at 2242.

Subsequently, when <u>Alice</u> was reheard en banc by the Federal Circuit prior to being affirmed by the Supreme Court, five judges cited <u>Microsoft</u> in stating that the "statutory presumption of validity" of § 282 "applies when § 101 is raised as a basis for invalidity in district court proceedings." <u>CLS Bank Int'l v. Alice Corp. Pty. Ltd.</u>, 717 F.3d 1269, 1284 (Lourie, J., concurring). Also citing <u>Microsoft</u>, an opinion joined by four other judges stated that "any attack on an issued patent based on a challenge to the eligibility of the subject matter must be proven by clear and convincing evidence." <u>Id.</u> at 1304–05 (Rader, J., concurring-in-part and dissenting-in-part). In its now-vacated opinion in <u>Ultramercial, Inc. v. Hulu, LLC</u>, the Federal Circuit cited these <u>Alice</u> opinions in explaining that to invalidate a patent on § 101 grounds at the pleadings stage, "the <u>only</u> plausible reading of the patent must be that there is clear and convincing evidence of ineligibility." 722 F.3d 1335, 1338 (Fed. Cir. 2013) (emphasis in original), <u>vacated,</u> <u>WildTangent, Inc. v. Ultramercial, LLC</u>, 134 S. Ct. 2870 (June 30, 2014). The court explained that "the analysis under § 101, while ultimately a legal determination, is rife with underlying factual issues." <u>Id.</u>; <u>see also</u> <u>Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings</u>, No. 12-1736–LPS–CJB, 2014 WL 4379587, at *3 (D. Del. Sept. 3, 2014) ("Patentability under Section 101 is a threshold inquiry and a question of law, one that may be informed by subsidiary factual issues." (internal citations and quotation marks omitted)). Multiple district courts addressing § 101 issues at similar stages of litigation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-09573 | Date | October 28, 2014 |
|---|---|---|---|
| Title | PETER WOLF v. CAPSTONE PHOTOGRAPHY, INC., ET AL. | | |

## IV.  ANALYSIS

The issue presented is whether the patents-in-suit are directed to patentable subject matter under 35 U.S.C. § 101.  Below, the Court first determines that the § 101 issue is ripe for decision, and then turns to the merits of defendants' motion.

### A.    The Ripeness of This Motion

The parties dispute whether the patent eligibility issue should be decided at this stage of the litigation, before claim construction.  As this Court has recently explained, "a District Court has broad discretion concerning the appropriate time to address § 101." Eclipse IP LLC v. McKinley Equip. Corp., No. SACV 14-742-GW(AJWx), 2014 WL 4407592, at *5 (C.D. Cal. Sept. 4, 2014).[2]  The Federal Circuit has noted "that it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter."  Bancorp Servs.,

---

since the Supreme Court decided Alice and vacated Ultramercial—including a recent decision of this Court—have found that the "clear and convincing" standard applies.  See, e.g., CMG Fin. Servs., Inc. v. Pac. Trust Bank, F.S.B., No. CV-11-10344 PSG (MRWx), 2014 WL 4922349, at *7 (C.D. Cal. Aug. 29, 2014);  Open Text S.A. v. Alfresco Software Ltd., No. 13-CV-4843, 2014 WL 4684429, at *3 (N.D. Cal. Sept. 19, 2014); Autoform Eng'g GMBH v. Eng'g Tech. Assocs., No. 10-14141, 2014 U.S. Dist. LEXIS 123684, at *8 (E.D. Mich. Sept. 5, 2014); Data Distrib. Techs., LLC v. BRER Affiliates, Inc., Civil No. 12-4878 (JBS/KMW), 2014 WL 4162765, at *7–8 (D.N.J. Aug. 19, 2014). It is true that the Supreme Court's recent decisions on § 101 eligibility have not stated a standard of proof.  But defendants have cited no case in which a court has held that the "clear and convincing" standard does not apply to this issue, and have presented no convincing reason to disagree with the courts cited above.

[2]As in Eclipse IP, "each party, according to its position, cites cases in which a court has either granted a § 101 motion to dismiss [or for judgment on the pleadings] or decided that § 101 is better considered later in the case."  2014 WL 4407592, at *5 ; see Memo. Supp. Mot. J. Pleadings (Dkt. No. 42-1) at 6–8; Opp'n (Dkt. No. 45) at 4–6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-09573 | Date | October 28, 2014 |
|---|---|---|---|
| Title | PETER WOLF v. CAPSTONE PHOTOGRAPHY, INC., ET AL. | | |

L.L.C. v. Sun Life Assur. Co. of Can. (U.S.), 687 F.3d 1266, 1273–74 (Fed. Cir. 2012). However, there is no "bright line rule requiring district courts to construe claims before determining subject matter eligibility." Id. at 1273 (quoting Ultramercial, LLC v. Hulu, LLC, 657 F.3d 1323, 1325 (Fed. Cir. 2011), vacated, 132 S. Ct. 2431 (2012); see also Cyberfone Sys., LLc v. CNN Interactive Grp., Inc., 558 Fed. App'x 988, 992 n.1 (Fed. Cir. 2014) ("There is no requirement that the district court engage in claim construction before deciding § 101 eligibility.").

Indeed, as one judge on the Federal Circuit has reasoned, in certain cases, "there are clear advantages to addressing section 101's requirements at the outset of litigation. Patent eligibility issues can often be resolved without lengthy claim construction, and an early determination that the subject matter of asserted claims is patent ineligible can spare both litigants and courts years of needless litigation." I/P Engine, Inc. v. AOL Inc., --- Fed. App'x ---, 2014 WL 3973501, at *12 (Fed. Cir. Aug. 15, 2014) (Mayer, J., concurring).  Thus, claim construction is a prerequisite to the § 101 inquiry "only where claim construction disputes are relevant." Eclipse IP, 2014 WL 4407592, at *5; see Lumen View Tech. v. Findthebest.com, Inc., 984 F. Supp. 2d 189, 205 (S.D.N.Y. 2013) (finding claim construction unnecessary for a § 101 analysis because the claims were straightforward, covering broad subject matter categories, and "[n]o components [were] opaque such that claim construction would be necessary to flush out its contours").

In this case, the Court finds that the "basic character of the claimed subject matter is readily ascertainable from the face of the patent," and that plaintiff's arguments for delaying the § 101 inquiry are unpersuasive. See Cardpool, Inc. v. Plastic Jungle, Inc., No. C 12-04182 WHA, 2013 WL 245026 (N.D. Cal. Jan. 22, 2013), at *4.  First, plaintiff points to several of defendants' discovery responses, asserting that certain specification and claim terms are not sufficiently described, as indicating a need for construction "using the patent's extensive prosecution history." Opp'n at 5.  Specifically, plaintiff avers that defendants have "asserted that the terms 'associating identifying data' and 'cataloging each of the photographs in a web-site server' . . . are not sufficiently described by the specification." Id.  Plaintiff also points to discovery responses asserting that the patents "fail to adequately define the terms 'informing the sporting event competitors' and 'searching for a photograph.'" Id. at 6.  But beyond the conclusory statement that these terms would "have to be construed in order to determine whether they cover an abstract idea," plaintiff offers no argument as to how claim construction would aid the court in applying § 101 to these non-technical terms. See Cyberfone, 558

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-09573 | Date | October 28, 2014 |
|---|---|---|---|
| Title | PETER WOLF v. CAPSTONE PHOTOGRAPHY, INC., ET AL. | | |

Fed. App'x at 992 n.1 (determining that claim construction was unnecessary where the plaintiff urged claim construction but did not explain "how the analysis would change" as a result).

Plaintiff also contends that § 101 jurisprudence is not sufficiently developed to guide district courts in making an early determination of patent eligibility. Plaintiff argues that the Supreme Court's recent decisions in this area, most notably Alice, 134 S. Ct. at 2347, are vague, and that the Federal Circuit has only decided a handful of § 101 cases since Alice, all with "very different claims than the ones at issue here." Opp'n at 6–7. But plaintiff points to no pending appellate decision that would clarify the issue before this Court, or any other concrete indication that this issue would be more easily decided in several months' time. Moreover, although § 101 jurisprudence has generated significant controversy, Alice has clarified matters to some extent by making clear that the two-step test originally set forth in Mayo applies to abstract ideas, and by "categorically establish[ing] a clear rule that had previously been subject to debate: 'mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention.'" Eclipse IP, 2014 WL 4407592, at *3 (quoting Alice, 134 S. Ct. at 2358). Defendants have cited several post-Alice cases in which district courts have not found it necessary to wait for claim construction or further appellate guidance before determining patent eligibility, compared to just one post-Alice case postponing that decision cited by plaintiff. Moreover, in September—just a few months after Alice was decided—the Federal Circuit affirmed a district court's grant of judgment on the pleadings on patent eligibility grounds issued without relying on claim construction. See generally buySAFE, Inc. v. Google, Inc., 765 F.3d 1350 (Fed. Cir. 2014). Accordingly, no lack of appellate guidance prevents the Court from deciding the issue of patent eligibility at this juncture.

**B.    The Subject Matter Eligibility of the Patents in Suit**

Before applying Alice's two-part test to the patents in suit, it is worth examining a few of the Supreme Court's most relevant precedents.

In Diamond v. Diehr, 450 U.S. 175 (1981), the Court examined—and found patent-eligible—a patent application for a "process for curing synthetic rubber which includes in several of its steps the use of a mathematical formula and a programmed digital computer." Id. at 177. Although the process employed the well-known Arrhenius

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-09573 | Date | October 28, 2014 |
|----------|---------------|------|------------------|
| Title | PETER WOLF v. CAPSTONE PHOTOGRAPHY, INC., ET AL. | | |

equation, the Court found the process patentable because rather than "seek to pre-empt the use of that equation," the claims only "foreclose[d] . . . the use of that equation with all of the other steps in the[] claimed process . . . . includ[ing] installing rubber in a press, closing the mold, constantly determining the temperature of the mold, constantly recalculating the appropriate cure time through the use of the formula and a digital computer, and automatically opening the press at the proper time." Id. at 187. Thus, the claimed process was a patentable "<u>application</u> of a law of nature or mathematical formula." Id. (emphasis in original). The Court further explained:

> In determining the eligibility of respondents' claimed process for patent protection under § 101, their claims must be considered as a whole. It is inappropriate to dissect the claims into old and new elements and then to ignore the presence of the old elements in the analysis. This is particularly true in a process claim because a new combination of steps in a process may be patentable even though all the constituents of the combination were well known and in common use before the combination was made. The "novelty" of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter.

Id. at 188–89. Finally, the Court drew an important distinction. It cautioned that the proscription against patenting a mathematical formula "cannot be circumvented by attempting to limit the use of the formula to a particular technological environment," and "insignificant post-solution activity will not transform an unpatentable principle into a patentable process." Id. at 191–92. "On the other hand, when a claim containing a mathematical formula implements or applies that formula in a structure or process which, when considered as a whole, is performing a function which the patent laws were designed to protect (e. g., transforming or reducing an article to a different state or thing), then the claim satisfies the requirements of § 101." Id. at 192.

Three decades later, the court considered a patent application for "a procedure for instructing buyers and sellers how to protect against the risk of price fluctuations in a discrete sector of the economy." Bilski v. Kappos, 130 S. Ct. 3218, 3223 (2010). The first of the "key claims" consisted of:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-09573 | | Date | October 28, 2014 |
|----------|---------------|--|------|------------------|
| Title | PETER WOLF v. CAPSTONE PHOTOGRAPHY, INC., ET AL. | | | |

    (a) initiating a series of transactions between said commodity provider
and consumers of said commodity wherein said consumers purchase
said commodity at a fixed rate based upon historical averages, said
fixed rate corresponding to a risk position of said consumers;

    (b) identifying market participants for said commodity having a
counter-risk position to said consumers; and

    (c) initiating a series of transactions between said commodity provider
and said market participants at a second fixed rate such that said series
of market participant transactions balances the risk position of said
series of consumer transactions.

Id. at 3223–24 (formatting altered). The other "key claim" articulated the above claim in
a mathematical formula, and the other claims explained how those methods could be
applied to hedge risk in energy markets. Id. at 3224. The Court held that these claims
impermissibly sought a monopoly over the "abstract idea" of "hedging." Id. at 3231.
That the claims were confined to the "commodities and energy markets" did not save the
patent application, for "limiting an abstract idea to one field of use or adding token
postsolution components does not make the concept patentable." Id.

    In Mayo Collaborative Servs. v. Prometheus Labs., Inc., 132 S. Ct. 1289 (2012),
the Court applied the above precedents to "claims covering processes that help doctors
who use thiopurine drugs to treat patients with autoimmune diseases determine whether a
given dosage level is too low or too high." Id. at 1294. The Court held that these claims,
which concededly "purport[ed] to apply natural laws describing the relationships between
the concentration in the blood of certain . . . metabolites" and the proper drug dosage, did
not "transform[] these unpatentable natural laws into patent-eligible applications of those
laws." Id. Rather, "the steps in the claimed processes (apart from the natural laws
themselves) involve[d] well-understood, routine, conventional activity previously
engaged in by researchers in the field. At the same time, upholding the patents would
risk disproportionately tying up the use of the underlying natural laws, inhibiting their
use in the making of further discoveries." Id. Thus, the claims failed the test that "to
transform an unpatentable law of nature into a patent-eligible application of such a law,
one must do more than simply state the law of nature while adding the words 'apply it.'"
Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-09573 | | Date | October 28, 2014 |
|---|---|---|---|---|
| Title | PETER WOLF v. CAPSTONE PHOTOGRAPHY, INC., ET AL. | | | |

Put differently, the claims did not "add <u>enough</u> . . . to allow the processes they describe to qualify as patent-eligible processes that apply natural laws." <u>Id.</u> at 1297 (emphasis in original). The claims recited an "administering step," a "wherein" step, and a "determining" step. <u>Id.</u> (internal quotation marks omitted). The first step "simply refer[red] to the relevant audience, namely doctors who treat patients with certain diseases." <u>Id.</u> The "wherein" step "simply [told] a doctor about the relevant natural laws." <u>Id.</u> The "determining" step merely told the "doctor to determine the level of the relevant metabolites in the blood, through whatever process the doctor or the laboratory wishes to use." <u>Id.</u> Such processes were "well-known in the art," so that the step only taught "doctors to engage in well-understood, routine, conventional activity previously engaged in by scientists who work in the field." <u>Id.</u> at 1298; <u>see id.</u> at 1300 ("Simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable."). And "consider[ing] the three steps as an ordered combination add[ed] nothing to the laws of nature that is not already present when the steps are considered separately." <u>Id.</u> at 1298.

Finally, in <u>Alice Corp. Pty. Ltd. v. CLS Bank Int'l</u>, 134 S. Ct. 2347 (2014), the Court applied the two-step test gleaned from <u>Mayo</u> and discussed above to a claimed abstract idea. The claims related to "a computerized scheme for mitigating . . . the risk that only one party to an agreed-upon financial exchange will satisfy its obligation" ("settlement risk"). <u>Id.</u> at 2352. A representative method claim recited:

A method of exchanging obligations as between parties, each party holding a credit record and a debit record with an exchange institution, the credit records and debit records for exchange of predetermined obligations, the method comprising the steps of:

(a) creating a shadow credit record and a shadow debit record for each stakeholder party to be held independently by a supervisory institution from the exchange institutions;

(b) obtaining from each exchange institution a start-of-day balance for each shadow credit record and shadow debit record;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-09573 | | Date | October 28, 2014 |
|---|---|---|---|---|
| Title | PETER WOLF v. CAPSTONE PHOTOGRAPHY, INC., ET AL. | | | |

    (c) for every transaction resulting in an exchange obligation, the
supervisory institution adjusting each respective party's shadow credit
record or shadow debit record, allowing only these transactions that
do not result in the value of the shadow debit record being less than
the value of the shadow credit record at any time, each said
adjustment taking place in chronological order, and

    (d) at the end-of-day, the supervisory institution instructing on[e] of the
exchange institutions to exchange credits or debits to the credit record
and debit record of the respective parties in accordance with the
adjustments of the said permitted transactions, the credits and debits
being irrevocable, time invariant obligations placed on the exchange
institutions.

Id. at 2352 n.2.

    The patents claimed "(1) the foregoing method for exchanging obligations (the
method claims), (2) a computer system configured to carry out the method for
exchanging obligations (the system claims), and (3) a computer-readable medium
containing program code for performing the method of exchanging obligations (the
media claims)." Id. at 2353. "All of the claims [were] implemented using a computer"
and the "system and media claims expressly recite[d] a computer." Id.

    Applying the first step of the controlling test, the Court determined that the claims
were "drawn to the abstract idea of intermediated settlement . . . . i.e., the use of a third
party to mitigate settlement risk." Id. at 2355–56. The Court reasoned that this was a
"fundamental economic practice long prevalent in our system of commerce" and could
not be meaningfully distinguished from "the concept of risk hedging in Bilski." Id. at
2357.

    At the second step, the Court found that the claims did not involve sufficient
"'additional features' to ensure 'that the claim [was] more than a drafting effort designed
to monopolize the [abstract idea.]'" Id. at 2357 (brackets in original) (quoting Mayo, 132
S. Ct. at 1297). The Court first held that "[t]he introduction of a computer into the claims
does not alter the analysis at Mayo step two." Id. As in Benson, 409 U.S. at 67, "the
computer implementation did not supply the necessary inventive concept; the process

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-09573 | Date | October 28, 2014 |
|---|---|---|---|
| Title | PETER WOLF v. CAPSTONE PHOTOGRAPHY, INC., ET AL. | | |

could be 'carried out in existing computers long in use.'" Alice, 134 S. Ct. at 2357. The Court reasoned that "[s]tating an abstract idea while adding the words 'apply it with a computer' simply combines" the steps of "adding the words 'apply it'" and "limiting the use of an abstract idea to a particular technological environment." Id. at 2358 (internal citations and quotation marks omitted). This combination did not suffice to confer patent eligibility where neither step could independently, and could not "impart patent eligibility." Id.

Analyzing the claim elements separately, the Court explained that all of the computer functions were "purely conventional." Id. at 2359 (quoting Mayo, 132 S. Ct. at 1298) (internal quotation marks and brackets omitted). Specifically, creating shadow records amounted to "electronic recordkeeping—one of the most basic functions of a computer"—and "us[ing] a computer to obtain data, adjust account balances, and issue automated instructions" were all "well-understood, routine, conventional activit[ies] previously known to the industry." Id. (quoting Mayo, 132 S. Ct. at 1294). "In short, each step [did] no more than require a generic computer to perform generic computer functions." Even considered "as an ordered combination," the computer components "simply recit[ed] the concept of intermediated settlement as performed by a generic computer." Id. (quoting Mayo, 132 S. Ct. at 1298). The claims did "not, for example, purport to improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field," and instead amounted to "'nothing significantly more' than an instruction to apply the abstract idea of intermediated settlement using some unspecified, generic computer." Id. (quoting Mayo, 132 S. Ct. at 1298).

Below, the Court applies these principles to the patents in suit. In following Alice's test, the Court notes that the two steps are easier to separate in recitation than in application. See Eclipse IP, 2014 WL 4407592, at *2–3 ("Describing this as a two-step test may overstate the number of steps involved.").

        1.    The '214 and '875 Patents

                a.    The Patents Are Directed to an Abstract Idea

The Court finds that the practically identical '214 and '875 patents are directed to the abstract idea of providing event photographs organized by participant, as applied using the internet. As the specification explains, event photographers traditionally

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-09573 | Date | October 28, 2014 |
|---|---|---|---|
| Title | PETER WOLF v. CAPSTONE PHOTOGRAPHY, INC., ET AL. | | |

identified participants using bib numbers, and mailed relatively undesirable (thumbnail) versions of the matched photographs to participants for inspection and ordering of full-size photographs.  The patents in suit merely implement basic computer technology to perform the same process, with computer systems automating much of the work previously done manually: matching the photographs to participants and making the photographs available in a relatively undesirable (low-resolution or watermarked) form for inspection and ordering.  Even considering the issue at the judgment on the pleadings stage, the Court finds that moving the selection and ordering of event photographs onto a computer server cannot transform this practice into a patentable invention.[3]

Plaintiff argues that the claimed process is non-abstract and distinct from "long prevalent" photography practices because in the claimed process, participants search for photographs online, whereas in the prior art, photographers matched and mailed the photographs.  Therefore, he argues, although "it may seem commonplace now to search for event photographs on the internet . . . prior to Peter Wolf doing it for sporting event photography in 1999, it simply had not been done."  Opp'n at 9–10.  But this is of no moment.  "The 'novelty' of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter."  Diamond, 450 U.S. at 189.

---

[3]Plaintiff protests that defendants' arguments fail to analyze all of the claims as required.  But the Supreme Court's precedents have not required a court deciding § 101 eligibility to parse each individual claim, instead finding an analysis of representative claims sufficient.  See, e.g., Mayo, 132 S. Ct. at 1295 ("Like the Federal Circuit we take as typical claim 1 of the '623 Patent . . . . For present purposes we may assume that the other claims in the patents do not differ significantly from claim 1."); Bilski, 130 S. Ct. at 3223 (deciding the issue based primarily on two "key claims"); see also Planet Bingo, 2014 WL 4195188, at *2 ("[T]here is no meaningful distinction between the method and system claims or between the independent and dependent claims.  The system claims recite the same basic process as the method claims, and the dependent claims recite only slight variations of the independent claims." (citation omitted)).  Nor do defendants' arguments fail because they primarily "discuss bib numbers as the identifying data."  Opp'n at 9.  The other identification means claimed by the patents—"a participant's name, a code acquired from a component worn by a participant, and a date and time"—are similarly conventional means of identifying event participants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-09573 | Date | October 28, 2014 |
|----------|---------------|------|------------------|
| Title | PETER WOLF v. CAPSTONE PHOTOGRAPHY, INC., ET AL. | | |

What is relevant is whether the claimed subject matter is directed to an abstract idea, and if so, whether there is an inventive concept that sufficiently limits the claims to a patentable application thereof.  Nor is the transfer of the matching process from a photographer to a computer sufficient to confer patent eligibility.  In Bilski, the use of a computer intermediary allowed a consumer with a computer to do the "identifying [of] market participants that have a counterrisk for the same commodity" that would presumably have been done by a human broker in the prior art—but the Supreme Court still held that the Bilski claims were drawn to an abstract idea.  See 120 S. Ct. at 3218.

Next, plaintiff argues that any alleged abstract idea involved in the patents in suit cannot be stated more narrowly than "a method for providing event photographs," and that when the abstract idea is properly framed, the patents claim only a patent-eligible application thereof.  Opp'n at 12.  The Court disagrees.  Whether or not defendants' motion at times presents a "moving target," the Court's definition of the abstract idea as "providing event photographs organized by participant" does not; nor does it use improperly specific language (so as to stack the deck against patent eligibility) when compared to abstract ideas articulated by other courts.  Cf. CyberSource, 654 F.3d at 1370 ("verifying the validity of a credit card transaction over the Internet"); Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc., --- F. Supp. ---, 2014 WL 4364848, at *6 (E.D. Tex. Sept. 2, 2014) (Bryson, J.) ("currency exchange, as applied to the exchange of currencies in the form of loyalty award credits of different vendors").

Plaintiff relies heavily on the reasoning of the Federal Circuit's since-vacated Ultramercial decision, which defined an abstract idea as "one that has no reference to material objects or specific examples–i.e., it is not concrete."  722 F.3d at 1343.  In light of the Supreme Court's remand of Ultramercial for further consideration in light of Alice, this reliance is dubious, and defendants accurately point out that previously invalidated claims could similarly be argued to have had similarly "concrete" elements.[4] Nevertheless, plaintiff argues that "concrete" details in claim 1 of the '214 and '875 patents include (1) taking photographs, (2) using specific identifying details to match photographs to participants, (3) informing participants of the identifying data, (4)

_____

    [4]See, e.g., Alice, 134 S. Ct. at 2352 n.2 (reciting the steps of "creating" shadow credit and debit records, "obtaining" balances from each party, "allowing" only certain transactions, and "instructing" banks to exchange credits or debits).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-09573 | Date | October 28, 2014 |
|---|---|---|---|
| Title | PETER WOLF v. CAPSTONE PHOTOGRAPHY, INC., ET AL. | | |

transferring photographs to a computer network server; (5) cataloging the photographs for access; and (6) displaying the photographs for inspection and ordering. But because even plaintiff's preferred abstract idea definition—"a method for providing event photographs"— references photographs, the fact that "taking photographs" is involved is of no help in narrowing the claims to patentable subject matter. And if the remaining "concrete" steps are sufficient to remove the patents in suit from the realm of an abstract idea, it seems any process involving computers would pass the test. Details (2) through (6) are fairly implied by the idea of providing via the internet event photographs organized by participant. Event photographs could not be usefully placed online for ordering without using identifying details made known to the participants, placing and cataloging the photographs on a network server, and making the photographs available for inspection and ordering. Therefore, the Court finds that the '214 and '875 patents are directed toward an abstract idea, and moves on to Alice's second step.

    b.  The Patents Do Not Contain a Sufficient "Inventive Concept"

  At the second step of the Alice test, the Court finds that the '214 and '875 patents do not claim an "inventive concept" sufficient to confer patent eligibility by "ensur[ing] that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." Mayo, 132 S. Ct. at 1294.

  First, taken individually and as a whole, the independent claims do nothing more than recite a series of conventional steps carried out using basic camera and computer functions and mostly essential to placing searchable event photographs online for inspection and ordering. Plaintiff asserts, however, that the dependent claims narrow the invention to a patentable application, providing something "significantly more" than the claimed abstract idea itself. For example, plaintiff argues that claim 3 "further narrows the claim by restricting the identifying data to a 'code from a component,' which is not in the prior art, and also requires triggering a camera when the component passes a predetermined point, yet another concrete step (camera trigger) that is not described in Defendants' prior art." Opp'n at 16. Similarly, plaintiff contends that claim 5 restricts the identifying data to a search of the approximate time. Id. But these claims simply incorporate various conventional (and alternative) methods of identifying race participants. They do not significantly limit the claims, leaving other viable applications of the abstract idea to event photography, and they do not "improve the functioning of" any incorporated technology. See Alice, 134 S. Ct. at 2359. The dependent claims are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-09573 | Date | October 28, 2014 |
|---|---|---|---|
| Title | PETER WOLF v. CAPSTONE PHOTOGRAPHY, INC., ET AL. | | |

akin to those considered in Bilski, which "advise[d] using well-known random analysis techniques" to determine the expected gains from a transaction. 130 S. Ct. At 3224. Here, the dependent claims "advise using well-known" techniques of taking photographs and identifying event participants in order to match them to photographs.

Instead of limiting the claimed invention to a narrow subset of the idea at issue, the dependent claims list several ways of identifying event participants, none of which involves new technology, and the combination of which effectively preempts the field. Moreover, the dependent claims recite generic technological categories such as a "computer network server," a "web-site server," and a "digital camera." The most specific piece of technology recited by the claims is still generic: a "component worn by the sporting event participant . . . [that] trigger[s] a camera to take a photograph" by interfacing with "a sensor" and can include "a passive component," a "bar code," an "inductive circuit," or an "active component." See '875 patent Col. 5:66–16. Under Alice, these recitations of generic technology are insufficient to confer patent eligibility. See Alice, 134 S. Ct. at 2358 ("Given the ubiquity of computers, wholly generic computer implementation is not generally the sort of 'additional featur[e]' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the abstract idea itself.'" (citation and brackets omitted)); Planet Bingo, 2014 WL 4195188, at *3 (finding no inventive concept even though the claims required "a computer with a central processing unit, a memory, an input and output terminal, a printer, in some cases a video screen, and a program . . . enabling the steps of managing a game of bingo" (internal quotation marks omitted)). And as in Alice, these steps can be "carried out by existing computers long in use." Id. at 2357.

Plaintiff analogizes to a district court's decision in Autoform Engineering GMBH v. Engineering Technology Assocs., Inc., No. 10-14141, 2014 WL 4385855 (E.D. Mich. Sept. 5, 2014), but that case involved a much narrower claimed invention. Specifically, the claims at issue revolved around the creation of one part of a tool used to form sheet metal into different objects, which the defendants argued covered "basic concepts in the field." Id. at *2. The court reasoned:

> While the patent may include or rely on some basic concepts in the design of sheet metal forming tools, the patents also include numerous limitations that narrow the scope of the patent. For example: (1) smoothing an irregular component edge; (2) filling in a fill surface;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-09573 | Date | October 28, 2014 |
|---|---|---|---|
| Title | PETER WOLF v. CAPSTONE PHOTOGRAPHY, INC., ET AL. | | |

(3) forming a smooth component edge; (4) where the fill surface runs into the predefined component geometry by a continuous tangent; (5) arranging sectional profiles along the smooth component edge; (6) avoiding an overlap or intersection condition between sectional profiles; (7) parameterizing the sectional profiles by the means of profile parameters; (8) the profile parameters being scalar values; (9) laterally interconnecting the sectional profiles by a continuous surface to form the geometry of the addendum zone of the tool; and (10) where the addendum zone complements the component geometry in the edge zone and runs into the component and the binder with a continuous tangent.

Id. at *3. Although the Autoform court did not provide a detailed explication of its reasoning in denying a motion for summary judgment, the Autoform claims—directed to the physical creation of a subset of a piece of hardware—are clearly more detailed and limited than those the '214 and '875 patents.[5]

Plaintiff further contends that the '214 and '875 patents cannot fail § 101's test because they do not monopolize the field of event photograph distribution. Plaintiff argues, for example, that "if Capstone were to select participant photos by bib number, and then distribute those photos by email to the participants to view and offer for purchase, that would not infringe" the patents in suit.[6] Opp'n at 23. But this argument

---

[5] Defendants correctly point out that the Autoform court addressed these limitations in finding that an abstract idea was not claimed (Alice step one), not in an analysis of whether claims recited an "inventive concept" and thus claimed "significantly more" than an abstract idea (step two). See Reply at 14. But as noted above, the line between the two steps can be less than clear. Regardless, Autoform does not persuade the Court that the patents in suit pass either step of the Alice test.

[6] Plaintiff's argument that competitors could "use facial recognition, jersey or helmet colors as identifying data" is even less persuasive given the obvious impracticability of these means of identification in the context of an event with many participants. Similarly, listing event photos "on a website without any search criteria" is not a viable business model for distributing photographs from events of any significant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-09573 | Date | October 28, 2014 |
|---|---|---|---|
| Title | PETER WOLF v. CAPSTONE PHOTOGRAPHY, INC., ET AL. | | |

misses the mark because absent computer technology, plaintiff could not patent the idea of distributing event photographs organized by participant in brick-and-mortar shops, merely because competitors would still be permitted to conduct a mail-order business. The addition of generic computers and a web site does not change that analysis and meaningfully limit the claimed subject material. Cf. Tuxis Techs., LLC v. Amazon.com, Inc., No. 13–1771–RGA, 2014 WL 4382446, at *4 (D. Del. Sept. 3, 2014) (invalidating patent claims relating to the practice of real-time electronic "upselling" and reserving to the public "narrow methods of upselling" which did not "meaningfully limit" the abstract idea claimed).

Finally, plaintiff argues that the patents' reliance on a computer "adds a meaningful limitation" because the claimed methods "could not be done on paper or in the mind." Opp'n at 24. But in the pre-internet days, an event photographer could have identified race participants in photographs by bib number, approximate time, or other identifying information and, instead of mailing thumbnail images to each participant, could have placed a physical catalog[7] of images in a certain location—say, at a local running or photography store. This would be the analog equivalent of plaintiff's claimed process, done painstakingly with pen, paper, and similarly low-tech tools. And it would have been a patent-ineligible abstract idea. That generic computer technology allows for a more efficient process does not confer patent eligibility. See, e.g., Bancorp Servs., 687 F.3d at 1278 ("[T]he fact that the required calculations could be performed more efficiently via a computer does not materially alter the patent eligibility of the claimed subject matter."). Overall, the claims simply do not add sufficient "additional features" to claim something "significantly more" than the abstract idea, and fail for that reason.

2.     The '035 Patent

_____

magnitude.

[7]Or, as plaintiff's counsel urged at oral argument, a bulletin board. Contrary to plaintiff's argument at the hearing, the Court's conclusion is not based on reading Alice as rendering patent-ineligible any method claim involving a computer. Rather, the Court concludes that plaintiff's invention would not be patent-eligible without the use of computers, and that the addition of computers does not change that analysis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-09573 | | Date | October 28, 2014 |
|---|---|---|---|---|
| Title | PETER WOLF v. CAPSTONE PHOTOGRAPHY, INC., ET AL. | | | |

Next, the Court considers the '035 patent. Because many of its claims are the same as those discussed above, the Court incorporates its prior analysis into the discussion below.

a.   The Patents Are Directed to an Abstract Idea

To the abstract idea claimed by the above patents, the '035 patent adds only the abstract idea of distributing free or reduced-price digital event photographs with embedded advertisements, again applied with basic computer technology.

As with the '214 and '875 patents, plaintiff argues that the '035 patent does not claim an abstract idea because the claims contain sufficient concrete details. But in addition to the limitations discussed above—which are directed to an abstract idea—the independent claims of the '035 patent add only the steps of "utilizing an electronic device to create a field in a corner or margin of the selected digital photograph and associate visual advertiser indicia" and "electronically transferring the selected digital photograph containing a visual field with advertiser indicia to a user's electronic device by downloading the photograph to the user's electronic device or sending the user an electronic message including the digital photograph . . . or a link to download [it]." Opp'n at 18. In the main, these steps are implied by the abstract idea of distributing free or reduced-price digital event photographs with embedded advertisements. Distributing event mementos containing advertising is a longstanding commercial practice, and moving the process online does not change that. The dependent claims are directed to the same abstract idea with only minor variations: for example, claim 2 reiterates the types of identifying details to be used, and claim 4 recites posting the photographs for inspection with "a low quality resolution or containing a watermark." '035 patent Col. 9:6–16. These details do not change the fact that the claims "as a whole" claim the abstract idea of distributing reduced-price digital event photographs with embedded advertisements.

b.   The Patents Do Not Contain a Sufficient "Inventive Concept"

At step two of the Alice test, the '035 patent suffers from the same defect as the patents discussed above: the addition of generic computer functions is insufficient to supply an inventive concept conferring patent eligibility. Plaintiff's claims merely limit a longstanding practice to a particular technological environment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:13-CV-09573 | Date | October 28, 2014 |
|---|---|---|---|
| Title | PETER WOLF v. CAPSTONE PHOTOGRAPHY, INC., ET AL. | | |

Plaintiff argues that the '035 patent's use of a computer supplies an inventive concept because "one could possibly put an advertisement onto a photograph by hand, but few would ever want a hand-drawn advertisement on their photo." Opp'n at 24. But as discussed above, this essential argument—that the use of a generic computer makes a process more efficient or desirable—has been rejected as insufficient to confer patent subject matter eligibility where the claims do not contain any new technology.

Plaintiff also asserts that the '035 patent "has a limitation that restricts it to sporting events, so any other type of event photograph would not infringe," and that competitors can still add advertising to printed photographs. Opp'n at 24. But the Supreme Court has held that "limiting an abstract idea to one field of use . . . [does] not make the concept patentable." Bilski v. Kappos, 130 S. Ct. 3218, 3231 (2010); see also buySafe, 765 F.3d at 1355 ("At best . . . [the claims] 'limit the use' of the abstract guarantee idea 'to a particular technological environment,' which has long been held insufficient to save a claim." (quoting Alice, 134 S. Ct. at 2358)).

Thus, the Court finds that all three of the patents in suit are directed to patent-ineligible abstract ideas, and lack an inventive concept that would make them patent-eligible applications of those ideas.

**V.    CONCLUSION**

In accordance with the foregoing, the Court GRANTS defendants' motion for judgment on the pleadings.

IT IS SO ORDERED.

_____ : _____

Initials of
Preparer

VRV